## HOLLER v. ROCK HILL SCHOOL DISTRICT.

1. ROCK HILL SCHOOL—TUITION FEES.—The testimony is ample to show the necessity of collecting supplemental tuition fees for support of Rock Hill schools.
2. IBID.—IBID.—PUBLIC SCHOOLS—CONSTITUTION—18 STAT., 1169, CONSTRUED.—The Constitution of 1868 devised a complete system of free public schools, which the legislature was to organize as early as practical, which instruction being indefinite, has never been carried out, but the Constitution does not prohibit the organization of special schools under special acts, and hence the act (18 Stat., 1169,) creating the Rock Hill school district, and authorizing the board of trustees to require supplemental tuition of resident children between ages of six and sixteen, who are able to pay, is not contrary to the Constitutions of 1868 or 1895; and the trustees may lawfully enforce such regulation.

Before KLUGH, J., York, November, 1900. Reversed.

Action for injunction by George P. Holler, L. A. Pope, T. P. Roddey, T. L. Williams, Samuel O. Williams and James M. Williams, against Rock Hill School District, the trustees of said school, and the county treasurer. From judgment for plaintiffs, defendants, except the county treasurer, appeal.

*Messrs. Witherspoon & Spencers,* for appellants, cite: *Charter of Rock Hill School District is recognized and confirmed by Con. of 1895:* Art. XI., Con. 1895; art. XVIII.; 22 Stat., 172; 57 S. C., 128. *And not against the Constitution of 1868:* Con. 1868, art. X.; 32 S. C., 101.

*Mr. Wm. J. Cherry,* contra, cites: *Act incorporating Rock Hill School District must be construed under Con. 1868, art. X., and a school supported in part by compulsory tuition is not a free public school:* 26 L. R. A., 581; 13 *Id.,* 161; S. E. Rep., 120. *Proviso to sec. 5, art. XI., Con. 1895, does not judicially determine the constitutionality of act creating special districts:* 4 Wheat, 122. *And the legislature cannot cure such defects:* 30 S. C., 579. *Collection of same tuition from residents and non-residents violates Constitutions of 1868 and 1895:* 49 L. R. A., 343; 30 L. R. A., 697. *Injunction is proper remedy:* 34 S. C., 437; 13 L. R. A., 161.

March 28, 1901. The opinion of the Court was delivered by

JUDGE TOWNSEND, *acting Associate Justice in place of* MR. JUSTICE GARY. This case was heard together with the case of W. B. Rowell and others against the Florence Graded Schools and others. The object of this action is to enjoin the trustees of the Rock Hill School District from assessing tuition fees upon pupils attending certain schools of said district, and to restrain them from excluding pupils from said schools for non-payment of such fees. An injunction is asked, also, against the county treasurer, H. A. D. Neely, to prevent his paying to said trustees the public funds in his hands applicable to the public schools of said district.

The answer sets forth the legal authority for collecting such fees and the necessity therefor, and testimony was taken in support of such necessity.

The Circuit Judge omitted to pass upon the question of necessity for such fees, but he enjoined their collection from

resident pupils. The defendants, except County Treasurer Neely, appealed and their exceptions are as follows:

"1. Error, failing to find as matter of fact that the supplemental fees imposed by the trustees of the Rock Hill Graded School were necessary to the proper conduct and management of said schools.

"2. Error, in finding as matter of law the said trustees had no authority at all to require the said supplemental fees of residents of the school districts between six and twenty-one years, even when the requirements were coupled with a provision excusing all such patrons as should be unable to pay same."

The respondents gave notice that they would ask that the judgment below be sustained on the following grounds, in addition to those set forth in the decree, to wit: "That the assessment and collection of tuition fees violates (1) sec. 12, of art. I., of the Constitution of 1868, relating to personal rights; and (2) sec. 14, of art. I., of the Constitution of 1868, and sec. 5, of art. I., of the Constitution of 1895, relating to equal protection; and (3) sec. 8, of art. IX., of the Constitution of 1868, and secs. 1 and 5, of art. X., of the Constitution of 1895, relating to uniformity of taxation; and (4) secs. 5 and 6, of art. XI., of the Constitution of 1895, relating to free public schools; and (5) the provisions of the act of 1896 in regard to public schools."

In regard to the first exception, which involves the question of the necessity of collecting tuition fees, as the testimony was ample to support the necessity, it was error in the Circuit Judge not to find that it was necessary to collect tuition fees to properly support said schools.

In regard to the question raised by the second exception, and by additional grounds suggested by the respondents, it may as well be said just here that the underlying error in the complaint, and in the argument in support of its allegations and issues made thereby, is in assuming that the General Assembly has inaugurated the system of free public schools contemplated by the framers of the Con-

stitution of 1868. No such system has ever been provided for, and, therefore, the contention of respondents cannot be supported. It would be foreign to this discussion to inquire into the reasons for the omission. It is sufficient for us to know that the General Assembly has not inaugurated such a system of schools. The provisions of the Constitution of 1868 in regard to free public schools are not mandatory, inasmuch as no time was fixed for the establishment of such schools. Art. X., sec. 3, upon which respondents rely to a great extent, merely required that such schools as were outlined in that article should be provided for as soon as practicable after the adoption of the Constitution. If it should never become practicable, there was no obligation to act in the matter. This requirement is about as indefinite as it could be made. For reasons no doubt satisfactory to themselves, the General Assembly has not found it practicable to provide for such schools. It is true, that we have in our State public schools, some of which have been organized and are conducted under the general law on that subject, and others, no doubt, have been organized and are conducted under special acts of the General Assembly; but an examination of the various sections of art. X., of the Constitution of 1868, relating to free public schools, will show plainly that our system of public schools is very different from the system contemplated and outlined by the framers of that Constitution. Sec. 1 provides for a superintendant; sec. 2 provides for county school commissioners; sec. 3 is as follows: "The General Assembly shall, as soon as practicable after the adoption of this Constitution, provide for a liberal and uniform system of free public schools throughout the State, and shall also make provision for the division of the State into suitable school districts. There shall be kept open at least six months in each year one or more schools in each school district." Sec. 4 is as follows: "It shall be the duty of the General Assembly to provide for the compulsory attendance, at either public or private schools, of all children between the ages of six and sixteen years, not physically or mentally·dis-

-abled, for a term equivalent to twenty-four months at least: *Provided,* That no law to that effect shall be passed until a system of public schools has been thoroughly and completely organized, and facilities afforded to all the inhabitants of the State for the free education of their children." Sec. 5 provides for levying taxes for public schools. Sec. 6 provides for a normal school. Sec. 7 relates to institutions for the blind, the deaf and dumb. Sec. 8 relates to the establishment of a reform school as soon as practicable. Sec. 9 relates to the university and to the establishment of an agricultural college. Sec. 10 is as follows: "All the public schools, colleges and universities of this State supported in whole or in part by the public funds shall be free and open to all the children and youths of the State, without regard to race or color." Sec. 11 relates to donations for schools. All of these sections which relate to free public schools must be considered together, because they relate to one entire system; and when so considered it is plain that we have never had such a system in South Carolina. The prominent features of that system are expressed in the following words and clauses which appear in the sections referred to, to wit: "Liberal and uniform," "free," "public," "throughout the State," "compulsory attendance," "facilities afforded to all the inhabitants," "without regard to race or color," "and in addition one or more schools in each school district must be kept open at least six months in each year." Or condensing the whole into one short sentence, the system outlined in the Constitution of 1868, must be liberal and uniform throughout the State, and free and open to all the children and youths of the State, without regard to race or color, and all must attend by compulsion; and in addition one school or more must be kept open in each school district for at least six months in the year. It is plain that such a system is comprehensive, but very expensive, and for some reason our legislators have not adopted it. No doubt, the framers of the Constitution of 1868 foresaw that the inauguration of such a system would require much time and many experiments;

and this may have been the reason for not making the requirements in regard thereto mandatory. They, no doubt, realized that a tentative system was best, and they provided accordingly. For instance, the words, "as soon as practicable," in sec. 3, art. X., of the Constitution of 1868, shows that time was to be given for the use of discretion and judgment in regard to the practicability of the system. And the provision that compulsory attendance was not to be enforced until the system should be complete and thorough (see sec. 4, art. X.), shows also that experiments were anticipated, and that such experiments must have time to crystalize into a complete and thorough system. And the same may be said of the provision that all schools supported, wholly or in part by public funds, must be free and open to all, white and colored. This provision was to be adopted only in case the entire system as outlined in art. X. should, after time and trial, be adopted throughout the State. And the same may be said as to the provision for the formation of a reformatory school for juvenile offenders (see sec. 8, art. X.). That is a part of the entire system of education, and is to be considered with the other provisions on that subject, and even that provision for the establishment of an institution which every clime and country needs and demands, was left to the tentative process of adoption. In a word, the entire scheme was speculative and tentative, and no one of its requirements or recommendations was to be binding unless the whole scheme should be adopted, and appropriate acts passed by the legislature to carry the same into execution. And while our legislature has, no doubt, fully comprehended all this, they have not found it practicable to inaugurate such a system. There is nothing, however, in the Constitution of 1868 or in the Constitution of 1895 (which adopted nearly all the provisions of the Constitution of 1868, which related to public schools,) which prohibits the General Assembly from adopting other systems of schools. And accordingly, the General Assembly has from time to time enacted school laws, some general in their nature and others special.

In 1887, the Rock Hill School District was chartered by a special act (19 Stat., 1169). Among the powers vested in the trustees of said district was the power "to assess upon scholars, as supplementary tuition fees, such sum or sums as may be necessary to meet the expenses of the school attended by them." Under this authority the board of trustees fixed certain tuition fees which was to be paid by such as did not show that they were unable to pay them. The resolution of the board concluded with these words: "All pupils whose names are not entered upon the free list, or whose tuition is not paid within the time specified, shall be denied the privilege of attending school." The said act was not in conflict with any positive provision of either Constitution and was not prohibited by either, and was, therefore, not unconstitutional. And the said resolution being in accordance therewith, the action of the said board was legal and constitutional.

It is the opinion of this Court that the act of 1887 (19 Stat., 1169), by which the Rock Hill School District was chartered, is not in conflict with any provision of either the Constitution of 1868 or the Constitution of 1895, and is not inhibited by either Constitution, and is, therefore, not unconstitutional; and that the Circuit Judge erred in restraining the collection of tuition fees under the authority thereof.

It is the judgment of this Court, that the judgment below be reversed.