## LUTHER v. WHEELER.

1. CITIES AND TOWNS—NOTES.—Municipal officers have no authority to borrow money for the corporation unless expressly given by its charter or *necessarily* implied therefrom, but they may contract debts for erecting *necessary* municipal buildings, but such debts should be restricted to such sums as the officers could reasonably expect to pay out of ordinary revenues for the fiscal year; but in case the estimate of revenues, made in good faith, proved to be too large, indebtedness thereafter incurred in building is valid.

*Neely* v. *Yorkville,* 10 S. C., 141, *distinguished from this.*

2. IBID.—IBID.—MONEY HAD AND RECEIVED.—A note given by the officers of a town of less than 1,000 inhabitants, under authority of municipal resolution, for money used for municipal purposes and in erecting a *necessary* municipal building, and by it indorsed to another bank and afterwards renewed under resolution, is invalid, but the note is a symbol of the debt incurred for municipal purposes, and the holder may recover of the municipality as money had and received the actual amount received and so used, with legal interest.

*Bank* v. *State,* 60 S. C., 465, *distinguished from this.*

3. IBID.—ESTOPPEL.—That citizens and voters of a municipality partici-
pate in a town meeting at which it was resolved that a town hall be
built; that they knew of building the hall and of borrowing money
therefor, and of application of municipal revenues in part to building,
do not estop them from insisting that the note given for borrowed
money is void for want of power in the muicipal officers to make it.

Proceeding for injunction in the original jurisdiction of
this Court by R. L. Luther, J. B. Simpson, W. A. Moseley,
J. P. Bowers, T. A. Dominick and J. D. Quattlebaum,
vs. J. S. Wheeler, as intendant, and S. S. Birge, A. H.
Hawkins, R. C. Counts and D. W. Boland, as wardens of
the town of Prosperity, and Bank of Prosperity.

*Messrs. Bellinger & Townsend,* for petitioners, cite: *Tax-
payer may enjoin municipal contract*: 162 Ind., 173; 99
N. W., 611; 95 N. W., 135. *Municipality cannot ordinarily
issue a negotiable note*: 51 Fed., 185; 5 Dill., 165; Fed.
Cases, sec. 5276; 138 U. S., 684; 144 U. S., 86; 155 U. S.,
518; 46 Fed., 901; 50 Fed., 56; 56 Fed., 199; 73 Fed., 105;
83 Fed., 671; 95 Fed., 604; 192 Ill., 361. *Note violates Con-
stitution as to towns issuing bonds:* 4 Ency., 620; 2 N. &
McC., 126; 60 S. C., 555. *As to what forms of evidences
of indebtedness municipalities may issue:* Con., art. VIII.,
sec. 7; 60 S. C., 556. *No power to issue the notes:* Con.,
art. IV., sec. 13; art. VIII., sec. 7; 47 S. C., 424; Code
1902, 2021; 93 Ill., 240; 134 U. S., 632; 40 Barb., 574; 51
Conn., 21; 131 N. C., 657; 16 Fed., 532; 93 N. Y., 405.
*Taxpayer is not estopped from denying validity of note:* 121
U. S., 17; 68 Ill., 160; 88 Ill., 11; 71 N. Y., 513; 120
Fed. R., 661; 115 Wis., 340; 4 Lans., 528; 106 U. S., 487;
Fed. Cas., sec. 8276; 87 Ala., 588; 23 S. C., 57; 2 Tenn.,
97; 2 Woods, 584; Fed. Cas., sec. 2686. *Holder of void
note cannot have judgment as for money had and received:*
108 U. S., 282; Fed. Cas., sec. 8276; 16 Fed. Cas., 532;
64 Ill., 249; 92 Ill., 119; 10 Wis., 136; 13 Wis., 432; 45
Ia., 48; 2 Kan., 193; 40 Barb., 574; 102 U. S., 294; 23 N.
Y., 439; 114 U. S., 190; 43 Ia., 48; 79 Tenn., 323; 114
U. S., 190; 37 N. J. Law, 191; 68 Tex., 511. *Respondents*

*have no equities to be protected:* 135 N. C., 384; 181 Mo., 48.

*Messrs. Hunt, Hunt & Hunter,* for respondents. For Town Council, cite: *Has town right to borrow money for any purpose?* Con., art. VIII., secs. 3, 7; 60 S. C., 557; 11 Ency., 507; 37 Fed. R., 563; 2 L. R. A., 426; 146 Mo., 52; 21 Ency., 2 ed., 17. *Misappropriation of proceeds of bond does not make it invalid in hands of bona fide purchaser:* 21 Ency., 2 ed., 73, 74; 44 S. C., 319; 1 McC., 377; 2 Black, 722; 95 U. S., 375; 99 U. S., 86. *If debt is valid in Palmetto Bank, it is valid in Bank of Prosperity:* 44 Fed. R., 342; 45 Ia., 168; 51 Ia., 102.

For Bank of Prosperity, cite: *As to rights and powers of town:* Code 1902, 1946, 1951. *Plaintiffs are estopped by their acts from seeking the remedy here without offer to return:* 7 Ency., 20; 93 N. Y., 507; 31 Ia., 356; 22 Mich., 104; 39 Ohio St., 281; 43 Ia., 477; 18 Mich., 495; 15 Ohio St., 64; 36 S. C., 354; 9 L. R. A., 693. *Town is liable as for money had and received:* 9 L. R. A., 497; Green's Brice Ultra Vires, 724, *et seq.;* 1 Dil. Mun. Corp., secs. 126, 132, 133, 459-465; 2 Ibid., secs. 936-938; 16 Cal., 255; 118 U. S., 256; 21 Cal., 362; 9 Neb., 516; 77 U. S., 676; 102 U. S., 294; 107 U. S., 348, 568; 59 S. C., 81; 35 S. C., 187; 2 Ken. Com., 291; 11 U. S., 7; 1 Cow., 513; 14 Johns, 118; 25 U. S., 74.

November 27, 1905. The opinion of the Court was delivered by

.Mr. JUSTICE WOODS. The plaintiffs, as resident taxpayers of the town of Prosperity, brought this action to enjoin the defendants, as intendant and wardens constituting the town council of that town, from paying a note for $1,000 given to the Bank of Prosperity for money borrowed for the purpose of building a town hall, market and guardhouse. On the application of plaintiffs' attorneys, his Honor,

Chief Justice Pope, granted at chambers, on August 4, 1904, a temporary injunction, and required the defendants to show cause why it should not be made permanent. The defendants appeared on August 18, 1904, in answer to the rule to show cause, and it then appearing that issues of fact were involved, H. C. Holloway, Esq., was appointed referee, "to take the testimony and report the same, together with his conclusions thereon, to the Supreme Court at its regular November term, 1904." The facts as found by the referee are substantially as follows: On March 9, 1902, after due notice given by the town council, about sixty-five or seventy out of the ninety or ninety-five registered voters of the town of Prosperity, at least one of the plaintiffs being present, met at the High School building for the purpose of nominating an intendant and wardens to serve for the ensuing year. The testimony shows after the nominations a resolution to the effect that it be "the sense of this meeting that the new council procure a lot, and erect thereon a town hall, market and guard-house," was unanimously adopted. The design and cost of the building were not considered at this meeting, and at no time was the question of borrowing money for its erection ever submitted to the citizens of the town, the newly-elected council assuming entire charge of all these matters. The new council made an estimate of the income of the town for that fiscal year, and reached the conclusion that by managing economically they could pay $150 for the lot, expend $1,500 on the building, and still meet the ordinary current expenses of the town. On June 30, 1902, a lot for the site of the building was actually purchased at the price of $150, council giving the note of the town for the purchase money, with interest, due in one year. Relying on their estimate, council passed an ordinance on July 5, 1902, to borrow $1,000 from the Palmetto Bank & Trust Company, of Columbia, S. C., "for the purpose of building city hall." A resolution dated July 9, 1902, and properly signed and attested by the town officials, authorized the borrowing of $1,000 from the Pal-

metto Bank & Trust Company with which "to carry on the affairs of the town," the obligation to be secured by pledge of "the taxes of the town arising from the levy for the present year, or the profits derived by the town from the dispensary, or both if necessary." This resolution is not referred to in the minute book of council, but the referee found that it was the same as the ordinance mentioned as passed on July 5, 1902; and this seems correct, council explaining the apparent difference in purpose for which the money was borrowed by saying that when it was found necessary to borrow they decided to put the sum borrowed into the common treasury and pay it out as needed, whether for work on the building or for ordinary current expenses. On July 11, 1902, the town council negotiated the note of the town for $1,000, payable January 10, 1903, the resolution of July 9th being attached, at the Palmetto Bank & Trust Company, and received thereon $960. At this time the only debt outstanding against the town so far as the testimony shows was the $150 note given for the purchase-money of the lot. It is true, the ordinary current expenses for the remainder of the year had to be met, but the resolution authorizing the creation of the debt specified that the money was to be used "to carry on the affairs of the town," and there is nothing to show that the bank had express notice of the original ordinance specifying that the money was to be used for the purpose of building a town hall.

The cash book of the town shows that the total municipal income from all sources for the fiscal year beginning April 22, 1902, was $1,832.19. The receipts up to July 11, 1902, were $455.56, and the expenditures $440.82, of which $297.60 was paid out on the building and the balance on current expenses. This left available to council $1,391.37 with which to pay the ordinary current expenses from July 11th to the end of that fiscal year, amounting to $1,001.13, and with which to pay the balance of $1,352.40 on the lot and building debts of $1,650, thus showing council had fallen far short in their estimate. If the $1,650 had not

been spent on the town hall, council would have had a balance of $687.84 on hand at the end of the fiscal year; but instead of limiting the cost of the building and lot to $1,650 as originally contemplated, they decided to enlarge and improve the building, and to meet the additional expense, borrowed on September 8, 1902, $600 from the Bank of Prosperity, giving therefor the note of the town, payable in one year, thus making the total indebtedness of the town for the fiscal year 1902 $3,394.35, as against a total income of $1,832.19. At maturity, on January 10, 1903, the $1,000 note to the Palmetto Bank & Trust Company was taken up by the Bank of Prosperity, and a renewal note, under the seal of the town, was given by the council, the ordinance authorizing such action, which was similar to the resolution under which the original debt was incurred, being attached thereto. A like second renewal note was given at the maturity of the first, in 1904, under the authority of a similar ordinance. From this it clearly appears that this last renewal note for $1,000 to the Bank of Prosperity, maturing January 7, 1905, payment of which is herein sought to be enjoined, evidences the same debt that was created on July 11, 1902, with the Palmetto Bank & Trust Company. Thus it will be seen that council had created a debt against the town of $1,750, evidenced by three notes for $150, $1,000 and $600, respectively, which would necessarily have to be paid by a future council, after the expiration of their term of office, and out of taxes and licenses to be levied and collected in another fiscal year, and so the revenues of a future fiscal year would have to be applied to the payment of a debt contracted in a prior year. From the cash book of the town it appears that the total income of the town, including cash on hand, from April 22, 1903, to April 26, 1904, was $1,806.95, and the expenditures $1,743.96, which included payment of the $150 note for the purchase money of the lot and of the $600 note to the Bank of Prosperity. The total income of the town from January 1, 1903, to January 1, 1904, was $1,504.17,

and from January 1, 1904, to November 1, 1904, $1,292, showing that at no time have funds been on hand with which to pay the note for $1,000 held by the Bank of Prosperity.

At the time it was determined to erect this building, the council had no place to meet, the market was in bad condition, and the guard-house totally inadequate; and, therefore, it was necessary to erect a building of some kind for municipal purposes. When completed, the town hall cost $2,291.01, but the work appears to have been done cheaply, and the building to be quite satisfactory in every way.

During the progress of the work on the building, itemized statements of the receipts and expenditures of the town, showing the amount of its indebtedness and to whom due, were published in the newspaper or posted in public places; and any other information of this kind could have been had from the clerk and treasurer. Plaintiffs acquiesced in the incurring of these debts and the building of the town hall to the extent of making no complaint until the bringing of this action.

We consider first the general principles of law applicable to the case, and then the effect of the Constitution and the statute law of the State.

Municipal corporations have only such powers as are granted to them by the Constitution or by statute, either expressly or by necessary implication. The following statement of the law, taken from 1 Dillon on Municipal Corporations, sec. 89, is supported by practically unbroken authority: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." *Heise* v. *Town*

*Council,* 6 Rich., 404; *State ex rel. Atkins* v. *Mayesville,* 12 S. C., 76; *Blake* v. *Walker,* 23 S. C., 517; *White* v. *Rock Hill,* 34 S. C., 242; *Columbia Club* v. *McMaster,* 35 S. C., 1; *Mauldin* v. *City Council,* 42 S. C., 293.

The power to borrow money is not a necessary incident of municipal life, and hence does not exist unless expressly given, or unless some duties are imposed or powers conferred on the corporation which manifestly could not be exercised at all without borrowing money. The two leading cases on the subject are *Mayor of Nashville* v. *Ray,* 19 Wall., 468, 22 L. ed., 164; and *Hackettstown* v. *Swackhamer,* 37 N. J. L., 191. Authorities to the same effect will be found collected in 8 Rose's Notes, 253; note to *Jones* v. *Camden,* 51 Am. St. Rep., 828 (S. C.); *Wells* v. *Town of Salina,* 7 L. R. A., 759 (N. Y.); *Allen* v. *Intendant of La-Fayette,* 9 L. R. A., 497 (Ala.); 1 Dillon on Municipal Corporations, sec. 125, 1; and sec. 507a; 20 A. & E. Ency. Law, 1143. A contrary view was taken in a number of the earlier cases cited in 1 Dillon on Municipal Corporations, sec. 118, and by some of the Justices of the Supreme Court of the United States, in *Nashville* v. *Ray, supra.* There is now, however, little, if any, judicial dissent from the view that municipal officers are not the general fiscal agents of the corporation, with the implied power to borrow money for corporate purposes. This conviction of the courts has been greatly strengthened by the disasters which have befallen so many communities growing out of the negligent and fraudulent misappropriation of money borrowed by counties, cities and towns. In *State ex rel. Atkins* v. *Mayesville,* 12 S. C., 76, the Court says: "The only point discussed at bar is the power of the town of Mayesville to levy taxes. It appears that no express authority is granted for that purpose in its charter. Such power can only be implied on the ground of necessary implication. To raise such an implication, it would be necessary to hold that municipal powers cannot be effectively granted without the taxing power—a proposition that we cannot affirm; no such power of taxa-

tion can, therefore, be implied." The power to levy taxes is far more usual and necessary to corporate existence than the power to borrow money on the faith of taxes, and if the former is not implied from the fact of incorporation, for a stronger reason the latter is not.

There is, however, an obvious difference between borrowing money, even for the purpose of applying it to the ordinary current expenses of the town, and contracting debts to those who are employed to do those things requisite to the conduct of the town's affairs, such as street laborers, policemen, etc., or even for the erection of buildings to be used for municipal purposes. "In the one case the application of the credit is secured to the advancement of the authorized object, while money borrowed is liable to be lost, to be squandered, or to be diverted to illegitimate purposes." 2 Daniel on Neg. Inst., sec. 1530. Under the general rule of law, the council of the town of Prosperity could have made a debt for a town hall and guard-house to one who contracted to build it. *Neely* v. *Yorkville,* 10 S. C., 141; 1 Dillon on Municipal Corporations, sec. 125, 6; *Police Jury* v. *Britton,* 15 Wall., 566, 21 L. ed., 254; *Mayor of Nashville* v. *Ray,* 19 Wall., 468, 22 L. ed., 164; 21 A. & E. Ency. Law, 31; *Claiborne County* v. *Brooks,* 111 U. S., 400, 28 L. ed., 470; *Merrill* v. *Monticello,* 138 U. S., 673, 34 L. ed., 1069; *Allen* v. *Intendant of LaFayette,* 9 L. R. A., 497 (Ala.); *Newgass* v. *City of New Orleans,* 21 Am. St. Rep., 368; *Clark* v. *City of Des Moines,* 87 Am. Dec., 423, and note.

But even the power to contract debts for municipal purposes should be restricted to such debts as the council could reasonably expect, and in good faith did expect, to pay from the ordinary revenue of the town for the current municipal fiscal year. Without such a restriction, it is manifest there would be no safeguard against involving the town in overwhelming debt for municipal buildings and enterprises out of all proportion to its present or reasonably to be expected population and wealth. While this might not imply the same moral turpitude, it is as disastrous to the taxpayer

as intentional misappropriation of borrowed money. Especially when any unusual enterprise is contemplated, all who deal with the municipal authorities are chargeable with knowledge that the council would have no right to involve the town in debt for its prosecution, unless after a careful estimate, they with good reason believed there would be a surplus revenue for the current year, over all necessary current expenses, sufficient to pay the debt to be contracted for such building or other enterprise. If, however, such an estimate is made leading to the reasonable conclusion that the anticipated revenue will be sufficient to meet the debt contemplated for the municipal building or other special enterprise, as well as current charges, and accordingly the building or other enterprise is commenced, and any considerable expense incurred, and then it should turn out that the estimates of the expenses were too low or the estimates of the revenue too high, indebtedness thereafter incurred in the prosecution of the enterprise would nevertheless be valid, because the law is not so unreasonable as to require in such circumstances the waste of the public funds which would be consequent upon the abandonment of the work in an incomplete condition. Judicial expression as to this limitation upon the power of municipal officers to contract debts in the name of the corporation, which we think should be insisted on, is not as explicit as might be desired; but this view is clearly intimated in the very strong opinion of the Court, delivered by Mr. Justice Bradley, in Nashville v. Ray, supra. And the view of Judge Dillon is, that the usual grants of municipal powers contemplate that the expense of the execution of such powers shall be met year by year from revenue derived from current taxation and other ordinary sources. 1 Dillon on Municipal Corporations, sec. 125. The case of Neely v. Yorkville, supra, is not an authority to the contrary, for there one of the bonds in issue was dated February 11, 1861, and the other June 4, 1861, and both were payable January 1, 1862. Presumably, they were given in anticipation of the collection of the revenues of

1861; certainly there is no evidence in the record that they were not so given, and the question here under discussion, as far as the reported case shows, was not made in argument and was not referred to in the opinion. But even if the general rule of law should be thought not so rigid as we have stated it, as to the circumstances under which a municipality may contract debts without special authority, as we shall hereafter see, it was made so by the .Constitution of 1895.

The endorsement of a note given by a municipal corporation which has no power to borrow money, or which has not exercised such power in compliance with the conditions required by law, cannot avail to give it validity. The Bank of Prosperity, therefore, cannot stand on any higher ground than the Palmetto Bank & Trust Company. There was never any power, either real or apparent, to give the note, and being therefore void from the beginning, no force could be given it by endorsement. Even when the power to borrow money is expressly given, though the holder of the paper is not bound to see that the money is properly applied, yet he takes it subject to the risk that it has been properly and lawfully issued. The authorities to this effect are so numerous that we refer only to *Jones* v. *Camden,* 44 S. C., 323; *Claiborne County* v. *Brooks,* 111 U. S., 400, 28 L. ed., 470; *Brenham* v. *German-American Bank,* 144 U. S., 173, 36 L. ed., 390.

Under the principles of law to which we have adverted the conclusion cannot be avoided that the note held by the Bank of Prosperity having been given for borrowed money, is not a valid obligation of the town. Of course, if the instrument here under consideration, in form a note, is to be regarded a bond, that would be an additional reason for holding it void, for it is not pretended there was any compliance with the constitutional conditions essential to the validity of a municipal bond issue. The question is not a practical one in this case, because the instrument is invalid even if it be regarded as a note, since it was given for bor-

rowed money. The Court does not, however, wish to be understood as assenting to the proposition urged by counsel for the plaintiffs that a paper, in form a promissory note, becomes a municipal bond, merely because it has affixed the seal of the corporation. *Bank* v. *Railroad Company*, 5 S. C., 156.

Regarding the note entirely void and therefore eliminated from the transaction, it is still to be considered whether the bank could recover the amount loaned for which the note was given, as money had and received by the town; not because it had been loaned to the town, or because its officers had borrowed it and promised to pay, but because it was money of another used by the town for legitimate corporate purposes authorized by law. Cogent argument may be made and strong authority adduced on both sides of this question. The argument against such a recovery is stated with great force by Beasley, C. J., in *Hackettstown* v. *Swackhamer, supra,* and by Judge Earle, in *Wells* v. *Salina,* 7 L. R. A., 759 (N. Y.). The view expressed in these and other cases is that to allow a recovery for money had and received while denying the power to corporate officers to make a valid contract to repay borrowed money, would be, (1) to repudiate such a contract in the abstract while ratifying and giving it full effect in the concrete, and (2) to raise an implied contract to repay where there is no power to make an express contract. A statement of the basis of the action for money had and received, we venture to think, will show that these arguments are not sound. Express contracts and contracts implied in fact depend upon the will of the parties to be bound, indicated in the one case expressly in some form recognized by law, and in the other by circumstances from which assent may be inferred as a conclusion of fact. Quasi-contracts, or contracts implied in law, are obligations imposed by law as duties quite independent of the assent of the party held to be bound, and often in spite of his earnest dissent. In an action on an express contract, or a contract implied in fact, the measure

of the recovery is ordinarily fixed by the promise. In an action depending on the obligation or duty called quasi-contract, the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the Court considers the defendant has been unjustly enriched at the expense of the plaintiff. If a recovery were allowed against a municipal corporation on a note for money borrowed, the judgment must be for the amount of the note, however large, and though the money may have been squandered. But in an action against a town for money had and received, the question is not what the claimant has parted with to officers who were not authorized to take his money for the town, or what they have promised him, but how much has the town been benefited. If the money was squandered, there can be no recovery; if it was used extravagantly for buildings or enterprises not reasonably necessary for municipal purposes, there can be no recovery beyond the actual benefit. This view, it will be seen, leaves no room to say that a promise to pay back money is implied where no valid contract can be made, or that allowing any recovery for money had and received subjects the town to the same peril as to admit the unrestricted right of a municipal council to borrow money. The right to such a recovery is supported by the weight of authority, as will appear by reference to the following citations, though it has been denied, as we have seen, by courts whose opinions should receive great consideration. 1 Dillon on Munic. Corps., sec. 126, note, secs. 460-461; 20 A. & E. Ency. Law, 1158; Keener on Quasi-Contracts, 272; *Marsh* v. *Fulton County,* 10 Wall., 676, 19 L. ed., 1040; *Salt Lake City* v. *Hollister,* 118 U. S., 256, 30 L. ed., 176; *Parkersburg* v. *Brown,* 106 U. S., 487, 27 L. ed., 238; *Chelsea Savings Bank* v. *City of Ironwood,* 130 Fed., 410 (C. C. A.); *Allen* v. *Intendant of LaFayette,* 9 L. R. A., 497 (Ala.).

The view of the Court expressed in *Bank* v. *State,* 60 S. C., 465, is not in the least inconsistent with this view. The

distinction between that case and this is made obvious by these sentences of the opinion of the Court, delivered by Mr. Justice Jones: "Nor do we think this action can be sustained, as contended by the respondent, as an action for money had and received. The State has only received that to which it was entitled, viz: money for the hire of convicts, received from the hands of the superintendent of the penitentiary. Plaintiff has paid no money to the State by mistake; for in the eye of the law plaintiff dealt with Neal, not with the State, and received from Neal all that it contracted for, the liability of the makers of the notes, supported by Neal's indorsement." There the State was not unjustly enriched, but received only its due, and there was no legal or equitable principle upon which it could be required to refund to a mere volunteer.

In this case these important facts are established: (1) The money was expended for a municipal purpose impliedly authorized by the charter, because reasonably necessary for the proper conduct of municipal affairs; for we suppose it will not be disputed that both under the general principles of law and the special provisions of the statute, the expenditure of public funds for the erection of a guard-house, council chamber and town hall would be sustained; (2) the town received full benefit for the entire amount expended; (3) the council had reason to believe, and did believe, when the building of the town hall was commenced and until they had expended on it about $300, that the entire debt of $1,000 contemplated and afterwards contracted to the Palmetto Bank & Trust Company could and would be repaid from the regular income of the town for the current fiscal year, and if the bank had exhausted all means of inquiry into the town's affairs, as it was its duty to do, nothing would have been discovered beyond these facts. If the general principles of law above stated are applied to these facts, the conclusion is obvious that the Bank of Prosperity as the equitable assignee of the Palmetto Bank & Trust

Company could recover against the town the sum advanced as money had and received by the town for its benefit.

But it remains to consider to what extent, if at all, these general rules have been modified by the Constitution and the statutes of this State—whether these general rules have been so altered that the town of Prosperity is under no legal obligation to refund the amount received from the Palmetto Bank & Trust Company. For it is to be observed that while a recovery for money had and received does not require either an express contract or a contract implied in fact to support it, yet it does require for its support a debt imposed by law, and where the Constitution or statute law of the State forbids not only the borrowing of money, but the incurring of any debt, or that a debt to be valid must be created under certain restrictions, as, for instance, that it must have the sanction of taxpayers or voters expressed at an election, then there can be no recovery for money had and received. In its last analysis, the action for money had and received stands on the judicial conception that the use by one person of the money of another creates a debt, but this judicial conception manifestly could have no application to municipal corporations in the face of positive constitutional or statute law that no debt shall be contracted by a municipality or that a debt shall be contracted only in a certain manner.

Warned by the disasters resulting from the abuse of public credit, the Constitutional Convention of 1895 endeavored to protect it by making the sanction of a referendum in almost all cases necessary to the validity of public debt. Even the General Assembly was forbidden to increase the debt of the State, except by the affirmative vote of two-thirds of the qualified electors voting at a popular election. Constitution of 1895, art. X., sec. 11. As to municipal corporations, the Constitution provides: "The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall

7—73

have any powers or be subject to any restrictions other than all corporations of the same class." Constitution, art. VIII., sec. 1. The General Assembly, in pursuance of this requirement, divided towns and cities into classes according to population. The town of Prosperity falls in the class of those containing less than 1,000 inhabitants. The Constitution further provides, in section 3, article VIII.: "The General Assembly shall restrict the powers of cities and towns to levy taxes and assessments, to borrow money and to contract debts, and no tax or assessment shall be levied or debt contracted except in pursuance of law, for public purposes specified by law." For the creation of a debt of any description, therefore, it is necessary for municipal authorities to find either legislative authority or warrant in some other provision of the Constitution itself. In the statutory provisions relating to towns of less than 1,000 inhabitants, to be found in article I., chapter 49, of the Civil Code, which may be said to constitute the charter of such towns, no authority is given to contract a debt of any description whatever, not even to anticipate in any way the collection of taxes for the current fiscal year. The fact that by section 1989 of the Civil Code, relating to towns of over 1.000 inhabitants, it is provided: "In cities of over 5,000 inhabitants, that, in anticipation of the collection of taxes in any fiscal year, said city council may from time to time, as occasion may require, borrow money for corporate purposes and pledge the taxes levied, or to be levied, in said year for said purposes for the payment of the money so borrowed and interest thereon," clearly implies that the General Assembly did not intend to confer upon towns of less than 1,000 inhabitants the power to borrow money for corporate purposes, and pledge the taxes of the current year for its payment. But, as we have seen, the power to borrow money is a much larger and more dangerous power than the power to contract a debt, either for labor or supplies, or for money had and received for the benefit of the town. In the one case, the lender has only to show that the proper corporate

officer received the money, and his right to recover does not in the least depend upon the benefit accruing by the actual application of the money; in the other, he who furnishes money can only recover for a debt arising from the actual benefit or enrichment of the town at his expense. The exclusion by omission, therefore, of towns of less than 1,000 inhabitants from the provision allowing towns to borrow money in anticipation of the collection of taxes does not necessarily imply an intention to deny such towns the power to create a debt of any kind in anticipation of the collection of current taxes.

While, as already said, there is no warrant in any act of the General Assembly for the creation of any debt by towns of less than 1,000 inhabitants, the following constitutional provision, attached as a proviso to the section prohibiting the creation of bonded indebtedness, except upon certain conditions, applies to all municipal corporations, and we think does warrant the creation and payment of a debt like that now under consideration by any municipality organized under the laws of this State, including those of less than 1,000 inhabitants: " *    *    * This section shall not be construed to prevent the issuing of certificates of indebtedness in anticipation of the collection of taxes for amounts actually contained or to be contained in the taxes for the year when such certificates are issued and payable out of such taxes." This section of the Constitution was framed and adopted in the light of the law of municipal corporations to which we have referred as generally recognized in this country. The well-established rule of law denying the right of municipal corporations to borow money without special authority conferred expressly, or by necessary implication, was well known when the Constitution was adopted, as one of the greatest safeguards against waste and corruption. If it had been intended to change this rule, there would have been an express conferring, or, at least, an express recognition of the power to borrow money. Hence we think it would be going much too far to hold that

this section gives by implication the power to borrow money on certificates of indebtedness, which would of course be binding on the corporation as soon as the money passed into the public treasury, without respect to whether it should thereafter be used for corporate purposes or not. But this provision of the Constitution must be held to have been made in view also of the other established rule to which we have adverted, that the proper municipal officers may contract debts for services actually rendered and money had and received to the actual benefit of the town in the prosecution of authorized municipal work, in anticipation of the taxes or other revenue, and with the reasonable expectation at the time the work was commenced and expenses incurred, that payment could and would be made from such expected revenue of the current year. When, therefore, the Convention recognized the authority of municipalities to contract debts and issue certificates in anticipation of the expected collection of taxes, it plainly meant those debts which the existing law recognized as being within their province and authority to contract, and, as we have seen, a debt for money had and received for the benefit of the town used in an enterprise authorized by law reasonably necessary for corporate purposes, the town receiving full value and the council believing and having reason to believe it would be paid from the revenue of the current year, was within the province and authority of the officers of the corporation. It is true, section 3, article VIII., of the Constitution, provides that no debt shall be "contracted except in pursuance of law, for public purposes specified by law." But this section is necessarily modified by section 7, which follows, and allows indebtedness to be incurred in anticipation of the collection of taxes. There is in this last section no specification of any particular purposes for which such debts may be contracted, and the meaning, therefore, manifestly is, they may be contracted for any legitimate corporate purpose. This was the character of the debt to the Bank of Prosperity, and its payment is authorized by the general rules of law, and is not

only not forbidden by constitutional or statute law, but on
the contrary, the authority to create such a debt is strongly
implied in the Constitution itself.  The debt being valid at
its creation, its validity is not affected by the fact that it
turned out that the reasonable expectations of the council
as to the ability to pay from anticipated revenues were not
realized, or even that the revenues received for the current
year were exhausted by the application of them to other pur-
poses.  It is true, the referee finds that on July 11, 1902,
when the money was actually received from the Palmetto
Bank & Trust Company, in expecting to repay it from the
revenue of the current fiscal year, the council did not take
into the account the ordinary current expenses for the re-
mainder of the year, but at the beginning of the fiscal year
they did take all items into the account, and reached the
conclusion that the money to be expended on the town hall
could be refunded in addition to providing for the ordinary
current revenues, and when the money was received from
the bank had actually expended on the building about $300.
To prosecute the work thus in good faith begun, rather than
incur the waste of abandoning it, stood on nearly as high
ground of necessity as the ordinary expenses of the town.

The character of the debt was not changed by the several
renewals of the note, for it was not created by the original
note, which was given entirely without authority, and it
therefore could not be changed in character by any change
of the note.  The note was of no force as against the town,
but as between the Palmetto Bank & Trust Company and
the Bank of Prosperity, it should be recognized as the symbol
of the debt, and hence its indorsement to the Bank of Pros-
perity will be recognized as a transfer of the debt.

The note being without validity and not representing the
debt as between the town and the bank, the rate of interest
expressed in it is of no consequence.  The real debt is $960,
the amount actually received and used, with interest from
July 11, 1902, at the rate of seven per cent. per annum, less

any sums paid by the town thereon in the form of discount, interest, or otherwise.

Under the views herein .expressed, it is not necessary to discuss the question of acquiescence, but it may be well to say that there is no evidence of participation or active 3 assent by the plaintiffs to the borrowing of money or the incurring of the debt, and hence there could be no estoppel. *Milster* v. *Spartanburg,* 68 S. C., 34.

The judgment of this Court is, that the town council of Prosperity be enjoined from paying more than the real debt as above stated  As the practical result is mainly in favor of the defendants, the plaintiffs must be charged with the costs of the cause.

THE CHIEF JUSTICE *did not participate in this opinion because of illness.*