16026

CRAIG *ET AL. v.* BELL *ET AL.*

(46 S. E. (2d) 52)

*Mr. John E. Stansfield,* of Aiken, for Appellants,

*Messrs. Henderson & Salley*, of Aiken, for all Respondents except J. J. Bell and W. M. Manning, as Treasurer and Auditor, respectively, of Barnwell County,

476

January 9, 1948.

The order of Judge Henderson, directed by the Supreme Court to be reported, follows:

In this action the plaintiffs, who are taxpayers of the Williston-Elko high school district in Barnwell County, seek to enjoin the assessment or collection of taxes with which to pay a certain note, dated November 27, 1946, held by the defendant, George E. Crouch; to enjoin the holder of the note from collecting any portion of it; to enjoin the trustees from paying the note, or using any of the borrowed money; for a judgment that the note be declared null and void; and that the Court determine who are the trustees of the high school district. The case for a permanent injunction was heard before me upon the merits.

On November 27, 1946, the defendants, J. C. Folk, W. B. Powell, S. L. Fogle and J. Lewis Smith, styling themselves trustees of the Williston-Elko high school district, borrowed from the defendant, George E. Crouch, the sum of $10,000-.00, and executed and delivered to him a note for this sum. The plaintiffs contend that this note is illegal, and should be declared to be null and void, for the reason that the signers of the note are not the trustees of the Williston-Elko high school district, that the trustees of the district have no authority under the law to borrow money in this manner, and

that there is no authority in law for trustees to erect a residence for the superintendent of the school district.

Although the note was first executed by the four gentlemen whose names are set forth above, thereafter it was signed by all the other persons who constitute the board of trustees of the Williston grammar school district, and by all of the chairmen of the districts which cooperated in the organization of the present Williston-Elko high school district.

The Act of the Legislature of March 13, 1929, now appearing as section 5532 of the code, established four high school districts in Barnwell County, and provided that the board of trustees of the Williston-Elko high school district should be "elected or appointed as now provided for by law." A difficult point arises in the case as to what is the method "now provided for by law". The plaintiffs contend that section 5406 of the code is the law which governs, and that the board is legally composed only of the chairmen of the boards of the several cooperating districts. The defendants, on the other hand, contend that the statute which governs is section 5405, and that the board is made up of "the board of trustees of the district wherein the high school is located, together with the chairman of each of the cooperating districts." The high school building is located in the Williston district, and in fact was there before.

It is to be noted that these two sections were originally parts of a single act, and consequently should be harmonized, if that can be done. While it is not at all clear from the language employed, I am inclined to the opinion that section 5405 is the one which governs here.

However, it must be said that the matter is not at all free from difficulty. The two sections when read together are ambiguous, and I think that the contemporaneous construction placed upon the statute, and the construction given it by the officers charged with the enforcement of the school law, should have great weight and should control in this instance.

The rule of contemporaneous construction of a statute, and the rule that the Court will give weight to the construction placed upon it by the officers who have the duty of administering the law, may be found in numerous decisions of our Supreme Court and in the text books. In the case of *Barksdale v. Morrison,* Harp. 101, 16 S. C. L. 101, it was decided as far back as 1824 that "if a statute be of dubious construction, long usage may be called in to aid the exposition."

In the case of *Read v. Phosphate Co. v. South Carolina Tax Commission,* 169 S. C. 314, 168 S. E. 722, 728, the Supreme Court said that "the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons."

The Supreme Court in the case of *City of Spartanburg v. Leonard,* 180 S. C. 491, 186 S. E. 395, 397, said that "another well-established rule of statutory construction comes to the aid of the City of Spartanburg in this situation. It is that the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons."

This rule of statutory construction was stated again in the case of *Hadden v. South Carolina Tax Commission,* 183 S. C. 38, 190 S. E. 249, where the court made a similar statement.

See also the cases of *Carolina Music Co. v. Query,* 192 S. C. 308, 6 S. E. (2d) 473, and *Harling v. Board of Commissioners,* 205 S. C. 319, 31 S. E. (2d) 913.

This is the general law also, as may be seen by reference to 59 C. J. 1022 and 1025, and 50 Amer. Jurisprudence, pages 307-311.

The election of trustees for the Williston-Elko high school district has been consistently thought to be governed by section 5405 of the code. Ever since the adoption of this act

in 1929, it has been regarded in Barnwell County by the Superintendent of Education and the County Board of Education, who administer the law along with the high school board, and by the public generally, that the board of this district consists of the trustees of the Williston grammar school and the chairmen of the cooperating districts. This view has been taken throughout these years by the public whose money has been spent and whose children have been educated; by the board of trustees itself; and by the Treasurer and Auditor of Barnwell County, who paid the vouchers of the board and levied the taxes. A marble tablet in the school building shows the names of the trustees then in office. Not only has this been recognized by the general public and the school authorities over long years, but in a court proceeding in the year 1939 it was held by his Honor, Judge Rice, that the act of 1929 "Constitutes the trustees of the high school district along with the chairmen of the grammar school districts, a board for the purpose of filing the required budget or estimate." This is by no means to be regarded as *res adjudicata,* as the parties are not the same, yet it emphasizes the long recognition of the personnel of the high school board.

The plaintiffs contend that under section 5343, boards of trustees of graded schools are limited to three, and that there is no authority for a board to contain as many as seven members. Plaintiffs say that the four gentlemen who originally signed the note may have been the four illegal members. Even if correct this does not seem to me to be at all decisive, for the reason that the note is now without doubt signed by the three members, the signatures of the other four who signed may be regarded as surplusage.

In addition to this, it appears to me that the issues in this case do not embrace this contention, since the fourth allegation of the plaintiff's complaint alleges that the seven named gentlemen are "trustees of Williston grammar or graded school district No. 29, of the County of Barnwell, State of South Carolina." The defendants ad-

mitted this allegation in their answer, and both parties have testified that it is correct. I consequently hold that the pleadings do not raise this contention in any manner.

However, despite these considerations, it seems quite clear that the Williston graded school board of trustees does consist of seven members, and that these members now are J. C. Folk, S. L. Fogle, George Lott, W. B. Powell, M. M. Player, J. Lewis Smith and Byron Wham. The Williston graded school district was created as a special school district in Barnwell County by the act of the Legislature adopted in 1888, Act Dec. 24, and found at 20 Stat. 123. The area of this district was later enlarged and now covers the site occupied by the present Williston-Elko high school building. An act of the legislature of 1897, Act March 2, to·be found at 22 Stat. 621, provided that the seven trustees of the district should be elected by the people. It is true that the Constitution of 1895 prohibits the future creation of special graded school districts, but it preserves those which had already been formed. This may clearly be seen by reference to Article XI, section 5, which reads in part as follows: "Provided, further, That nothing in this Article contained shall be construed as a repeal of the laws under which the several graded school districts of this State are organized. The present division of the Counties into school districts and the provisions of law now governing the same shall remain until changed by the General Assembly."

The intention of the framers of the Constitution is again made very manifest in Article XI, section 6, which reads in part: "Not less than three trustees for each school district shall be selected from the qualified voters and taxpayers therein, in such manner and for such terms as the General Assembly may determine, except in cases of special school districts now existing, where the provisions of law now governing the same shall remain until changed by the General Assembly."

It may be noted also that section 5343 itself, which provides generally for boards of school districts to be composed

of three trustees, except those school districts which had theretofore been organized by special acts. The very first words of section 5343 are "unless it be now specially provided otherwise by law for any particular school district or county, the boards of school trustees in this State shall be composed of three (3) members." In a later phrase in the same code section, we find these words: "Provided, that the provisions of this section shall neither repeal, supersede, nor annul any special act providing for the appointment, or election of school trustees in any school district, or in any of the several counties of the State."

Section 5391 of the code, in an article relating to public schools, which article also embraces section 5343, positively sets forth that "nothing contained herein shall be construed to repeal the acts of the General Assembly creating special and graded school districts, and the provisions of said acts shall apply to said school districts."

It does not appear that the special act creating the Williston graded school district has ever been repealed by the General Assembly.

In the case of *Holler v. Rock Hill School District,* 60 S. C. 41, 38 S. E. 220, the Supreme Court in a case decided after the adoption of the Constitution of 1895 recognized the validity of special school districts created by special acts of the Legislature.

At the hearing of the case, the plaintiffs pointed out the fact that the special acts creating the Williston grammar school districts are not carried forward into the code, and are not found in section 5531 and the other following sections embraced in article 6 relating to Barnwell County. In my opinion this is without significance, for the reason that the Constitution, as we have seen, clearly provides that school districts created before 1895 shall so remain until changed by the General Assembly, and for the further reason that the statute creating the Williston district was a special act, whereas code embodies the "general statutory"

laws, of the state. See the act of Sept. 26, 1942, 43 Stat. at Large, p. 1, pasted on the inside of the cover of Volume 1 of the 1942 code. Also 59 C. J. 891, and article 6, section 5, of our Constitution, all of which refer to "general statute law." It will be noted by examining the code that all acts regulating particular school districts in Barnwell County, and I believe in all other counties, which are included in the code, have been adopted since the New Constitution was put into effect. *See State v. McCaw*, 77 S. C. 351, 58 S. E. 145. The difference between general and special laws is clearly set forth at 59 C. J. 728-735. Neither the constitutional provision as to codification, nor the act of September 26, 1942, refers to "permanent" laws; both say "general" statutory laws.

The case of *State v. Meares*, 148 S. C. 118, 145 S. E. 695, concerned amendments to section 1752 of the Code of 1912 which were not incorporated in the 1922 code. This is quite different from the present case, since the Williston act did not amend any general act or code section, and was enacted prior to the Constitution of 1895.

The case of *Green v. City of Rock Hill*, 149 S. C. 234, 147 S. E. 346, and *Rutledge v. City of Greenville*, 155 S. C. 520, 152 S. E. 700, cited by the plaintiffs, did not deal with special acts creating special school districts prior to 1895, as in the instant case.

I therefore conclude that the board of trustees of the Williston-Elko high school district is composed of the seven trustees of the Williston graded school district and the eight chairmen of the other cooperating districts.

We turn now to the question of the right of the trustees of the high school district to borrow money. The defendants base their authority to borrow this money from Mr. Crouch on the Act of April 17, 1943, 43 Stat. at Large, page 146, which provides that "it shall be unlawful for the trustees of any school district in Barnwell

County to borrow any money for any purpose or create any indebtedness for and in behalf of their school district unless such loan or indebtedness has been first approved by the County Board of Education, the Treasurer of Barnwell County and the County Auditor." I do not think that this statute gives the trustees implied power to borrow money at will. It is quite important that school districts and other political subdivisions should not borrow money without definite authority, and it seems to me that in order for a school district to do so we should be able to put our finger on a statute either expressly or impliedly giving such authority. Clearly, this act of the Legislature does not expressly authorize the borrowing of money, and in my opinion authority to borrow is not reasonably to be implied from it. The statute is rather a limitation upon the borrowing of money, than an authorization. As bearing upon the intention of the Legislature, it may be noted that even during the present year, the General Assembly passed two acts permitting two other school districts in Barnwell County to borrow money. Acts approved February 27, 1947, 45 Stat. at Large, pp. 816, 818.

Consequently, it seems clear to me that the note of the school district now held by Mr. Crouch is not a valid obligation in itself, as a written instrument which can be sued upon, although the lack of power to borrow under the act of 1943 does not mean that the trustees are without authority to erect the building; only that they cannot borrow money or give a note acting under the statute of 1943, as they did.

There enters here, however, the principle of money had and received, as set forth in the case of *Luther v. Wheeler,* 73 S. C. 83, 52 S. E. 874, 4 L. R. A., N. S., 746, 6 Ann. Cas. 754. In that case it was held that although a note is invalid, yet it is a symbol of a debt incurred for municipal purposes, and the holder may recover of the municipality, as money had and received, not on the note as such, but for the actual amount received and used for the benefit of the

town. The principle announced in that case has been re-affirmed in many subsequent decisions, including the cases of *Lucas v. City of Florence,* 103 S. C. 169, 172, 87 S. E. 996; *City of Spartanburg v. Leonard, supra; United States Rubber Products v. Town of Batesburg,* 183 S. C. 49, 63, 64, 190 S. E. 120, 110 A. L. R. 144; *Peurifoy v. Boswell,* 162 S. C. 107, 128, 160 S. E. 156.

In the present case, the act of 1943, page 146, while not clearly giving authority to borrow money, is nevertheless of great importance, since I find as a fact under the testimony that the trustees in this case in good faith and upon the advice of the school authorities believed that the statute did in fact give them the authority to borrow the money, and the debt to Mr. Crouch was incurred in the utmost good faith. Such being the case, it seems to me that the school district is legally obligated to Mr. Crouch under the principle of money had and received, certainly to the extent of the amount which has already been expended for the benefit of the district, and the collection of taxes to pay that obligation should not be enjoined even if the note itself cannot be sued upon.

More than $1,800.00 of the borrowed money has actually been spent on the new building, and this, together with obligations incurred, amounts to over $2,900.00. Finding itself in this predicament, the board of trustees decided to try to save this loss. As stated in *Luther v. Wheeler, supra* (73 S. C. 83, 52 S. E. 876) "the law is not so unreasonable **as to require in such** circumstances the waste of the public funds which would be consequent upon the abandonment of the work in an incomplete condition."

Consequently, the defendants, who constitute the board of trustees of the Williston-Elko high school district, acting under section 5531 of the code, have executed a new note in favor of Mr. Crouch for $10,000.00. This note has not been delivered, but the defendant-trustees are ready and willing to deliver it and Mr. Crouch to accept it, and to give up the original note for cancellation.

The act of 1940, which is now incorporated in the ▆▆ code as section 5531, provides that when it shall be found by the County Treasurer, County Auditor and County Superintendent of Education, and the trustees of any school district in Barnwell County, that the district is in debt, upon the filing of a proper application by a petition in writing by the trustees, approved in writing by the County Board of Education, it shall be lawful to levy sufficient taxes upon the taxable property of the district to liquidate the indebtedness. This section also provides that the board of trustees "are hereby authorized and directed to issue their note or notes, which shall be binding obligation of any such school district." A later act was adopted in 1943, Act April 15, 43 Stat. at Large, page 129, making certain changes as to the persons who have authority to find the school district to be in debt, but this act of 1943, in my opinion, does not repeal that part of section 5531 of the code which provides for the execution of a note by the trustees. Repeal of statutes by implication is not favored by the Courts.

It may be observed that even if the provisions as to the giving of a note were repealed there would still be the debt, the note would only be an evidence of the debt, and the levy of taxes would not be affected in any event.

The trustees of the high school district have diligently and carefully carried out all of the requirements set forth in section 5531 and the amendment. It has been specifically found as a fact by the County Treasurer, County Auditor, the Superintendent of Education, and the trustees of the school district that the district is in debt; a proper petition has been made in writing to the county board, and has been approved by that body.

Being in debt and steps having been taken pursuant to section 5531 of the code and its amending act, it seems to me that the trustees may now legally deliver the new note which they executed on March 24, 1947, and substitute it for the invalid note which Mr. Crouch now holds. Such being the case, it would not seem proper that the actions of

the county officials should be enjoined, but that they should be permitted to deliver the new note, and to take up and cancel the original one.

It may be noted that a six mill tax levy now exists, which is paying off an old debt of the district, and it is planned to continue this levy in force for the short time necessary to pay off this $10,000.00.

Turning now to the last question, as to the purpose of the loan, it appears from the testimony that the trustees desired to build a residence for the superintendent of the high school grounds. This school is located outside of the corporate limits of the Town of Williston, has no municipal police protection, and is the subject of constant trespass and depredation upon the school property. The purpose of the board in having the superintendent reside on the grounds is to have him there to keep an oversight over and to protect the property of the district from these trespassers. In my opinion this is a proper school purpose, and within the implied powers of the school board.

I think that the Courts, at the present time, take a somewhat liberal view of the implied powers of municipalities or school districts. Cases may be cited which give examples of the principle as laid down by our Supreme Court on this subject. In the case of *Luther v. Wheeler, supra,* the building of a town hall was sustained. In the case of *Jones v. City of Camden,* 44 S. C. 319, 23 S. E. 141, 51 Am. St. Rep. 819, the building of a combination opera house, store, and town hall was sustained as being within the implied power of the municipality. The Supreme Court in the case of *State v. City of Columbia,* 115 S. C. 108, 104 S. E. 337, 339, upheld the power of the city council of Columbia to erect an opera house in the city hall building. In the case of *Haesloop v. City Council of Charleston.* 123 S. C. 272, 115 S. E. 596, the City of Charleston was authorized to donate real estate to be used for the building of a tourist hotel. In the case of *Chapman v. Greenville Chamber of Commerce,* 127 S. C. 173, 120 S. E. 584, the

building of a chamber of commerce structure was sustained by the Court as falling within the implied powers of the ·city, the council having determined that it was for the welfare of the community. See also *Irvine v. Town of Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A., N. S., 363, and *State v. Cain,* 78 S. C. 348, 58 S. E. 937.

In the pending case, in order to protect the school property, I think that unquestionably the trustees may add rooms to the present school building for the watchman to live in, ·or a suitable building detached from and near to the school building. The exact size of the building, its material and lasting qualities and matters of that sort should, in my ·opinion, be left in a measure to the discretion of the trustees.

It is my conclusion and holding that the board of trustees had authority to determine that the best interest of their school district would be subserved by the erection of a residence for the superintendent on the school grounds. This decision was made in the utmost of good faith and in the exercise of its honest judgment as to reasonable necessity. I do not think there was any abuse of their discretion, and believe that their action should be approved by the Court.

It is therefore ordered, adjudged and decreed that the prayer of the complaint for a permanent injunction be, and the same hereby is, refused, provided the defendant-trustees, within ten days after notice of the filing of this decree, shall deliver to the defendant George E. Crouch the new note dated March 24, 1947, and referred to above, and provided the said George E. Crouch delivers over the old note to the defendant-trustees for cancellation.

PER CURIAM.

We are satisfied with the result of the decree of Honorable E. H. Henderson, Judge of the Second Judicial Circuit, and direct that said decree be reported herewith.

Where, as in this case, the Chairmen of the respective Boards of Trustees of the various School Districts involved, have approved the action of a majority of the Trustees of Williston School District, evi-

denced by a renewal note signed by all of the Trustees of Williston School District (including the Chairman thereof), and by the respective Chairmen of the Boards of Trustees of the other School Districts which constitute the Williston-Elko High School District, it is not necessary to a decision of the main issue, to wit, whether a renewal substituted note of March 24, 1947, executed as aforesaid, is a valid and existing indebtedness of Williston-Elko High School District, for this Court to now decide who are the trustees of Williston-Elko High School District. However, for future guidance in the conduct of the affairs of said High School District, we hold that the membership of the Board of Trustees of Williston-Elko High School District is governed by Section 5406 of the Code of 1942, for the reason that none of the School Districts here involved contains an incorporated town of twenty-five hundred inhabitants according to the last preceding census.

Judgment affirmed.