16133

MARSHALL v. ROSE, MAYOR, *ET AL.*

(49 S. E. (2d) 720)

430

*Mr. Huger Sinkler,* of Charleston, *for Appellant,*

*Mr. C. W. Derrick,* of Marion, *for Respondents,*

The order of Judge Sease follows:

The plaintiff in this action is a taxpayer of the City of Marion. He seeks to enjoin the corporate authorities of that City from issuing not exceeding Fifty Thousand ($50,000-.00) Dollars of General Obligation Bonds of the City, whose proceeds are to be used "for the erection of a recreation center and swimming pool within the city limits of Marion." To a complaint which alleges the invalidity of such bonds upon the grounds,

(a) That the purpose for which their proceeds are to be expended is neither a corporate purpose, Article VIII, Section 6, nor a public purpose, Article VIII, Section 3, and,

(b) That by the issuance of such bonds, the City will have exceeded its Constitutional debt limit, the defendant municipality has demurred.

It would appear from the complaint that the assessed value of all property in the City of Marion is slightly in excess of $1,200,000.00. Apart from indebtedness, specifically excluded by reason of special Constitutional amendments, the bonded indebtedness of an incorporated city or town may not exceed 8% of the assessed value of its taxable property, Article VIII, Section 7. But, up to that limit, the City may incur bonded indebtedness, so long as the expenditures be for corporate or public purposes. *Winstead v. Williams*, 132 S. C. 365, 128 S. E. 46.

Besides the general amendment to Section 7, of Article VIII, ratified February 3, 1911, excluding from debt com-

putations, bonded indebtedness of municipal corporations incurred in connection with waterworks, sewers and lighting plants and systems, there is a special Constitutional amendment relating to the City of Marion. It would appear that the version of this amendment, as set forth in Volume 1, Code of Laws for 1942, at pages 1280 and 1281, is not accurate. The amendment, as it was ratified by Act 23 of the Acts and Joint Resolutions of the General Assembly for the year 1921, reads as follows:

"That the limitations imposed by this section and Section 5 of Article X of the Constitution of the State of South Carolina shall not apply to the bonded indebtedness of the town of Marion, when the proceeds of such bonds are applied exclusively for the building, erecting, establishing and repairing, extending or maintaining of sidewalks, streets, waterworks, lighting plants, sewerage system, fire department or town hall and guardhouse for such town, or for either of such purposes or for the payment of any indebtedness already incurred for any or either of such purposes; and when the question of incurring such bonded indebtedness is submitted to the qualified electors of said municipality by the Town Council of said town, and a majority of those voting in such election or elections shall vote in favor thereof."

The wording here is not quite *verbatim* with the wording of the Proposing Resolution, but the differences are infinitesimal and there is no change in substance or meaning. *De minimis non curat lex.*

The bonded indebtedness of the City of Marion, with sinking funds applicable thereto, is as follows:

(1) $25,000.00 of an original issue of $100,000.00 of Public Improvement Bonds.

While the particular purposes for which these bonds were issued do not appear, it would seem that the sinking funds set apart for the retirement of this debt

more than equals the principal debt outstanding and, in view of this fact, this issue need not be considered. *Cf. Briggs v. Greenville County,* 137 S. C. 288, 135 S. E. 153, 161, wherein it was said:

"It is well settled that, in computing the bonded debt of a municipality for the purposes of a constitutional or statutory limitation upon bonded debt, there should be deducted from the gross bonded debt the sinking funds * * * pledged for the payment of the debt, and only the difference between the two amounts should be considered as the bonded debt of the municipality."

To the same effect see 38 American Jurisprudence, page 160.

(2) $200,000.00 of General Improvement Bonds, dated July 1, 1947, with no sinking funds.

However, of these bonds, $62,000.00 were issued for the installation of sanitary sewers. This amount is clearly deductible under both the General Amendment of February 3, 1911, heretofore referred to, and the Special Amendment relating only to this municipality. Again, $85,000.00 of this issue were earmarked for improvements of streets and sidewalks. Bonds issued for this purpose are also deductible because of the Special Constitutional Amendment. The remaining $53,000.00 of the $200,000.00 issue were for the installation of storm sewers.

It is around this last item that the controversy stems. The plaintiff contends that bonds issued for this purpose are not deductible, while the defendants contend that storm sewers are embraced within the language of the Special Amendment dealing with sidewalks and streets. The defendants properly concede that storm sewers are not a part of the sewerage system. Quite obviously, the sewage system referred to in the amendment relates to sanitary sewers.

Apart from deductible items, the bonded debt limit of Marion is 8% of $1,200,000.00, or $96,000.00.

If the bonds issued for storm sewers are not deductible, then the entire issue of $50,000.00, now sought to be issued, could not be sold, as it would be the duty of this Court to restrain the issuance of as much of the issue as would put the City beyond its 8% debt limit. *Watson v. Livingston,* 154 S. C. 257, 151 S. E. 469.

On the other hand, if storm sewers come within the language of the Special Amendment, excluding bonds issued for "the building, erecting, establishing and repairing, extending or maintaining of sidewalks, streets," then these bonds must not be considered in calculating the City's Constitutional debt limit, and the proposed issue would not increase the bonded debt of Marion beyond its debt limit.

To sustain his point, plaintiff directs attention to the wording of two other Constitutional Amendments, notably the Amendment to Article X, which becomes a part of Section 14, Volume 1 of 1942. Code, page 1351, and the Amendment to Article X, which becomes Section 14a, and is found on page 1352, of Volume 1 of the Code. Both deal with the right of certain cities to assess abutting property owners for permanent improvements. By the first of the two Amendments referred to, the City of Greenville is authorized to levy assessments for the cost of permanent improvements to streets and sidewalks "including lateral pipe lines." Obviously, the lateral pipe lines have to do with drainage. By the second of the two Amendments, the City of Charleston is authorized to levy assessments "for the purpose of paying for permanent improvements on streets * * * and for drains." The drains mentioned here are doubtless comparable to storm sewers. Plaintiff then points out that the General Constitutional Amendment, art. 10, § 17, which is the source of authority for the great majority of incorporated cities and towns to levy assessments, merely deals with permanent improvements "on streets and sidewalks."

As a consequence, he argues that since it is obviously necessary for special authority to exist before an assessment might be levied for the cost of storm drains, it is apparent that storm sewers are not included in the general term, "permanent improvements," and by analogy could not be embraced by the language previously quoted from the Special Amendment relating to Marion. Futhermore, he points out that the purpose of a storm sewer is two-fold. Not only does it drain the streets and sidewalks, but it relieves abutting property from the danger and damages which may be occasioned by storm waters. Finally, the plaintiff points out that the two bond issues, the one for storm sewers and the one for improvements to streets and sidewalks, were voted on separately on the same day. He, therefore, argues that if they were both regarded in the same category, they would have been submitted jointly as one question.

It is not necessary to the decision here for me to place a construction upon the term "permanent improvements" as used in the General Amendments, empowering cities or towns to levy assessments against abutting property. However, I can readily perceive situations where permanent surface treating could not be laid without provision being made to dispose of surface water. Storm sewers would, under such circumstances, be as indispensable as the grading of the street or the laying of the rock foundations upon which the surface treatment is laid. It would seem to me that anything necessary to insure the permanency of the improvements must be embraced by the term, "permanent improvements." My views here seem to find support in the statement in 44 Corpus Juris, at page 170, reading:

"Authority to pave a sidewalk includes, as a necessary incident, authority to grade, curb and drain it."

The language we are dealing with here is most comprehensive. It includes, "erecting," "repairing" and "maintaining" streets and sidewalks and as storm sewers have a definite function in the maintenance of streets,

and render them both usable and of long duration, I am satisfied and so hold that the bonds issued for storm sewers are not to be considered as a part of the bonded indebtedness of Marion in computing its Constitutional debt limit, but may be disregarded as relating to the erection, repair and maintenance of streets and sidewalks. I attach no significance to the fact that the bonds for storm sewers and for "improvements to streets and sidewalks" were separately submitted. Had they so wished, the municipal authorities might have divided the $85,000.00 issue into two separate issues, one for streets and the other for sidewalks. Had that happened, it could hardly be argued that both items were not deductible in full from the debt computation.

The other phase of the plaintiff's attack upon the validity of these bonds relates to his contention that "a recreation center and a swimming pool" are "neither public nor corporate purposes" and, therefore, are not purposes for which taxes may be levied or indebtedness incurred. It must, of course, be recognized that municipal corporations have only such powers as are granted to them by the Constitution or by statute, either expressly or by necessary implication. And, that any fair or reasonable doubt concerning the existence of power is resolved by the Courts against the municipality, and the power denied. *Luther v. Wheeler*, 73 S. C. 83, 52 S. E. 874, 4 L. R. A., N. S., 746, 6 Ann. Cas. 754.

Furthermore, even a casual examination of our Constitution will show how careful the framers of that document were to throw safeguards around the incurring of bonded indebtedness, whether it was of the State, the municipalities, or the political divisions or subdivisions of the State. Notwithstanding, the power to incur indebtedness is permitted when authorized by law for public purposes, Article VIII, Section 3, and the power to assess and collect taxes is permitted for corporate purposes, Article VIII, Section 6.

Among the earliest of the enactments of the General Assembly, following the adoption of the Constitution of 1895, is the Act now codified as Section 7327. While that Section now contains a list of specific purposes for which bonds may be issued, the statute as originally enacted merely read:

"That it shall be the duty of the municipal authorities of any incorporated city or town of this State, upon the petition of a majority of the freeholders of said city or town, as shown by its tax books, to order a special election in any such city or town for the purpose of issuing bonds *for any corporate purpose* set forth in said petition." Act March 9, 1896, Volume 22, Statutes at Large, page 88.

I have italicized the words, "for any corporate purpose," to emphasize the absence of an attempt to enumerate any list of corporate purposes. Patently, it was fully recognized that while weight might be given to definitions by the General Assembly as to what were corporate purposes, the ultimate determination of this question was for the judiciary. *Cf. Gentry v. Taylor,* 192 S. C. 145, 5 S. E. (2d) 857. Hence, I attach little weight to the argument advanced by the Plaintiff that the omission of recreation parks and municipal swimming pools is of any particular significance.

The acquisition and maintenance of public parks, thereby securing healthful rest and recreation, have long been recognized as proper municipal purposes and I see no difference whatsoever between municipal parks and the recreation center and swimming pool desired by the voters of Marion. As I conceive it, the Constitutional provisions to which I have referred did not intend to limit municipalities to provide only for the absolute necessities of their citizens. Had such been the intention, more restrictive language would have been used. On the contrary, I am satisfied that a reasonable use of public money for objects to promote the general welfare was intended. The objects of this bond issue fall within the category.

It is, accordingly, ordered that the Demurrer herein interposed be sustained and the Complaint dismissed.

September 28, 1948.

PER CURIAM.

The decree in this case by the Honorable T. S. Sease, presiding Judge, is very clear and comprehensive. All exceptions are overruled and this decree is adopted as the judgment of this Court.

BAKER, C. J., and FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.