### 24346

HOSPITALITY ASSOCIATION OF SOUTH CAROLINA, INC., Thomas L. Sponseller, GHI, Inc. d/b/a/ Hampton Inn Airport, John Street Associates d/b/a Hampton Inn Historic District, SAFHI, Inc. d/b/a Hampton Inn Mt. Pleasant, Airport Properties, Inc. d/b/a Radisson Inn-Charleston Airport, and Red Roof Inn, Inc., Plaintiffs v. The COUNTY OF CHARLESTON, a political subdivision of the State of South Carolina, Defendant. HOSPITALITY ASSOCIATION OF SOUTH CAROLINA, INC., Thomas L. Sponseller, Mariners Inn Owners Association d/b/a Hilton Head Island Hilton Resort, South Carolina Hyatt Corp. d/b/a Hyatt Regency Hilton Head, The Westin Resort, Inc. d/b/a Westin Resort of Hilton Head, and Holiday Inn BV d/b/a Crystal Sands Resort, Plaintiffs v. The TOWN OF HILTON HEAD ISLAND, SOUTH CAROLINA, a municipality and body corporate and politic, Defendant. HOSPITALITY ASSOCIATION OF SOUTH CAROLINA, INC., Thomas L. Sponseller, CFC Food Management Corporation, Fast & French, Inc., The Oyster Factory, Inc., Crazy J's, Inc., Claire, Inc., Port City Foodservices, Inc., S.S.W.N.N. Corp., H.C.R. Enterprises, Inc., Old Munich, Inc., S & S Old Towne, Inc., Cusch Carolina, Inc., Hyman's Seafood Co., Knoxville, Inc., J.R.C., Inc., Mistral, Ltd., Porta Via, Ltd., Mike Calder's Pub, Gennaro's, Inc., LaTasha's Taste of New Orleans, Inc., Plaintiffs v. The CITY OF CHARLESTON, a municipality and body corporate and politic, Defendant.

(464 S.E. (2d) 113)

Supreme Court

*John M.S. Hoefer* and *B. Craig Collins*, both of *Willoughby & Hoefer, P.A.*, and *Professor William Quirk*, of the *University of South Carolina School of Law*, Columbia, *for plaintiffs.*

*A. Arthur Rosenblum* and *Nancy B. Tecklenberg,* Charleston, *for defendant County of Charleston.*

*Curtis L. Coltrane,* of *Wilson & Coltrane,* Hilton Head, *for defendant Town of Hilton Head Island.*

*William B. Regan* and *Frances I. Cantwell,* both of *Regan & Cantwell,* Charleston, *for defendant City of Charleston.*

Heard Sept. 21, 1995.

Decided Nov. 13, 1995.

CHANDLER, Chief Justice:

In these consolidated actions, plaintiffs challenge certain ordinances enacted by defendants County of Charleston (County), Town of Hilton Head Island (Town), and City of Charleston (City). For the reasons discussed below, we render judgment for defendants.

## FACTS

### County Ordinance

On November 16, 1993, County adopted an ordinance imposing a 2% fee on the gross proceeds from the rental of any accommodations furnished to transients within Charleston County. "Accommodations" is defined in the ordinance as all rooms (excluding meeting and conference rooms), campground spaces, recreational vehicle spaces, lodgings or sleeping accommodations furnished to transients by any hotel, inn, condominium, motel, "bed and breakfast," residence, or any other place in which rooms, lodgings, or sleeping accommodations are furnished for consideration. Accommodations supplied to the same person for a period of 30 continuous days are specifically exempt from the ordinance.

The fee imposed by the County Ordinance is imposed upon the person to whom the accommodation is rented or leased and becomes due and payable at the time the accommodation is rented or leased. The fee is to be collected by the provider of the accommodation and is to be remitted to the County.

The ordinance requires the establishment of an interest-bearing, segregated and restricted account into which all revenues received from the accommodations fee will be deposited. The ordinance provides that the funds received from

the accommodations fee shall be utilized "for capital projects, the support of tourism and tourist services in a manner that will best serve the tourists from whom it was collected." It is further stated that the funds shall be spent to build capital projects which "will serve and attract tourists who regularly seek accommodations in Charleston County."

### Town Ordinance

The Town Ordinance was adopted on November 15, 1993, and was amended on January 10, 1994. As amended, the ordinance imposes a 2% fee on the gross proceeds from the rental of short-term accommodations furnished to transients within the Town. The fee is imposed upon those utilizing the accommodations and is collected and remitted to the Town by the provider of the accommodations.

The Town Ordinance provides that any money collected thereunder shall be deposited in a segregated account, and that the money shall be utilized for the primary purpose of:

(i) Nourishment, re-nourishment (re-sanding), and maintenance of public beach access within the territorial limits of the Town of Hilton Head Island; and,

(ii) Dune restoration, including the planting of grass, sea oats or other vegetation useful in preserving the dune system within the territorial limits of the Town of Hilton Head Island.

If sufficient funds have accrued to achieve the primary purpose, the ordinance provides that the funds may also be used for the following additional purposes:

(i) Maintenance of public beach access within the territorial limits of the Town of Hilton Head Island; and,

(ii) Capital improvements to the beaches and beach related facilities, such as public parking areas for beach access; dune walkovers; and rest room facilities, with or without changing rooms, at public beach parks within the territorial limits of the Town of Hilton Head Island.

### City Ordinance

The City Ordinance, which was enacted on December 7, 1993, imposes a 1% fee on the gross proceeds derived from the sale of food and beverages sold in establishments that main-

tain a license for the on-premises consumption of alcohol, beer or wine. The fee is imposed upon the patron to whom the food or beverage is sold and becomes due and payable at the time the food or beverage is sold. The fee is to be collected by the establishment selling the food or beverage and is to be remitted to the City.

The City Ordinance establishes a special account where monies remitted to the City pursuant to the ordinance are deposited. All monies in this account, including interest, must be used "only for the purpose of offsetting, to the extent possible, the costs to the City in providing police, fire inspection, and sanitation services to the establishments subject to [the] ordinance, and for tourism-related costs incurred by the City in providing for the safety, security, and well-being of patrons."

Plaintiffs, which include a trade association, a "citizen and resident" of the State, and businesses that will have to collect and forward the fees imposed by the ordinances, brought these actions in the Court's original jurisdiction, arguing that the ordinances were invalid.

## ISSUE
Are the local ordinances valid?

## DISCUSSION
Determining if a local ordinance is valid is essentially a two-step process. The first step is to ascertain whether the county or municipality that enacted the ordinance had the power to do so. If no such power existed, the ordinance is invalid and the inquiry ends. However, if the local government had the power to enact the ordinance, the next step is to ascertain whether the ordinance is inconsistent with the Constitution or general law of this State. For the reasons discussed below, we hold that (1) the local governments had the power to enact the ordinances, and (2) the ordinances are not inconsistent with either the Constitution or general law of this State.

### Home Rule
For generations, legislative delegations of the General Assembly controlled virtually every aspect of local government. Relinquishment of this control effectively began in April of 1966, when the General Assembly created a Committee to study the South Carolina Constitution and appointed then-

Senator John C. West as chairman. The major task assigned to the West Committee was to develop and recommend amendments to the Constitution that would eliminate archaic provisions and "strengthen it in such other areas, so that it [would] provide a workable framework with proper safeguards for sound State, County and local governments."[1]

In June of 1969, after three years of numerous hearings and conferences, the West Committee submitted its Final Report to the Governor and General Assembly. In the Report, the Committee unanimously recommended amendments to the Constitution that would place the control and management of county and municipal affairs in the hands of duly elected local officials.[2]

Following three years of legislative debate on the Report, the General Assembly placed upon the November 1972 general election ballot for referendum vote an Amendment of Article VIII of the Constitution. *See* Act No. 1631, 1972 S.C. Acts 3184. Acting upon a favorable vote of the people, the General Assembly, on March 7, 1973, ratified the Amendment. *See* Act No. 63, 1973 S.C. Acts 67.

As ratified, new Article VIII directed the General Assembly to implement what was popularly referred to as "home rule" by establishing the structure, organization, powers, duties, functions, and responsibilities of local governments by general law.[3] S.C. Const. art. VIII, §§ 7 and 9. In addition, new Article VIII mandated a liberal rule of construction regarding any constitutional provisions or laws concerning local government. S.C. Const. art. VIII, § 17.[4]

Although the General Assembly was required to implement

---

[1] *See* Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895 3 (1969) (hereinafter "West Committee Report").

[2] *See* West Committee Report 84-93 (1969).

[3] New Article VIII prohibited the practice of enacting "special laws" for a specific county or municipality. S.C. Const. art. VIII, §§ 7 and 10.

[4] Prior to ratification of Article VIII, courts of this State strictly and narrowly construed any grant of local government power under what was commonly referred to as "Dillon's Rule." *See McKenzie v. City of Florence,* 234 S.C. 428, 108 S.E. (2d) 825 (1959), *overruled on other grounds, McCall v. Batson,* 285 S.C. 243, 329 S.E. (2d) 741 (1985); *Lomax v. City of Greenville,* 225 S.C. 289, 82 S.E. (2d) 191 (1954); *Marshall v. Rose,* 213 S.C. 428, 49 S.E. (2d) 720 (1948); *Southern Fruit Co., Inc. v. Porter,* 188 S.C. 422, 199 S.E. 537 (1938); *Luther v. Wheeler,* 73 S.C. 83, 52 S.E. 874 (1905).

New Article VIII effectively abolished Dillon's Rule by mandating the following rule of construction:

home rule, new Article VIII essentially left it up to the General Assembly to decide what powers local governments should have.[5] Acting under this authority, the General Assembly enacted various statutes regarding the powers of counties and municipalities.[6]

One such statute is S.C. Code Ann. § 4-9-25 (Supp. 1994). This statute, which was enacted by the General Assembly in 1989, states in part as follows:

> All counties of the State . . . have authority to enact regulations, resolutions, and ordinances . . . respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them.

This broad grant of power is "in addition to the powers conferred to [a county's] specific form of government [under S.C. Code Ann. § 4-9-30]," and is limited only by the requirement that the regulation, resolution, or ordinance be consistent with the Constitution and general law of this State. *Id.*[7]

> ■ As for municipalities, S.C. Code Ann. § 5-7-30 (Supp. 1994) grants every municipality in the State the power to "enact regulations, resolutions, and ordinances . . .

---

The provisions of [the] Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by [the] Constitution and by law shall include those fairly implied and not prohibited by [the] Constitution.

S.C. Const. art. VIII, § 17.

[5] Article VIII does place some limits on the General Assembly's authority to decide what powers local governments should have. For example, Article VIII itself grants local governments certain limited powers. *See* S.C. Const. art. VIII, § 16 (acquisition and operation of public utilities systems). Further, Article VIII, § 14, precludes the General Assembly from delegating to local governments the responsibility for enacting legislation related to the subjects encompassed by that section. *See City of North Charleston v. Harper,* 306 S.C. 153, 410 S.E. (2d) 569 (1991); *Robinson v. Richland County Council,* 293 SC. 27, 358 S.E. (2d) 392 (1987).

[6] For a thorough discussion of the development of home rule in this State *see* James L. Underwood, *The Constitution of South Carolina, Volume II: The Journey Toward Local Self-Government* (1989).

[7] Section 4-9-25 also states that, "[t]he powers of a county must be liberally construed in favor of the county and the specific mention of particular powers may not be construed as limiting in any manner the general powers of counties."

respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality or for preserving health, peace, order, and good government in it." Like the broad grant of power to counties in § 4-9-25, the only limitation on the broad grant of power to municipalities in § 5-7-30 is that the regulation, resolution, or ordinance may not be inconsistent with the Constitution and general law of this State. *Id.; see also Town of Hilton Head Island v. Fine Liquors, Ltd.*, 302 S.C. 550, 397 S.E. (2d) 662 (1990) (recognizing the broad grant of power in § 5-7-30).

Although § 5-7-30 lists various specific powers possessed by municipalities, we hold that the broad grant of power stated at the beginning of the statute is not limited by the specifics mentioned in the remainder of the statute. To hold otherwise would directly contradict S.C. Code Ann. § 5-7-10 (1976), which states that "the specific mention of particular powers shall not be construed as limiting in any manner the general powers of ... municipalities." Further, a limited reading of § 5-7-30 is inconsistent with the liberal rule of construction mandated by Article VIII, § 17.[8]

We hold that § 5-7-30, especially when read in light of Article VIII's mandatory liberal rule of construction, authorized the Town of Hilton Head to enact an ordinance promoting the general health, safety, and welfare of the Town's residents and visitors by raising funds to improve, maintain, nourish and re-nourish the Town's beaches. In addition, § 5-7-30 authorized the City of Charleston to enact an ordinance raising funds to offset the costs incurred by the City in providing police, fire, sewer, and other services in locations subject to the ordinance. It is undisputed that such an ordinance would promote the security, health, order, and general welfare of the City. As for Charleston County, the plain language of § 4-9-25 authorizes the enactment of an ordinance that improves the general welfare of the County by enhancing services and facilities used by tourists, whose presence is essential to the County's economy. Consequently, the County, Town, and City ordinances are valid unless inconsistent with the Constitution or general law of this State.

---

[8] Section 5-7-10 also states that "[t]he powers of a municipality shall be liberally construed in favor of the municipality."

## County Ordinance

Plaintiffs argue the County Ordinance is invalid because it conflicts with the local sales and use tax statutes, S.C. Code Ann. §§ 4-10-10 to -100 (Supp. 1994), and the statute imposing a statewide tax on accommodations, S.C. Code Ann. § 12-36-920 (Supp. 1994). We disagree.

A local government ordinance conflicts with a State law when its conditions, express or implied, are inconsistent and irreconcilable with the State law. *City of North Charleston v. Harper*, 306 S.C. 153, 410 S.E. (2d) 569 (1991); *Town of Hilton Head Island v. Fine Liquors, Ltd., supra.* Here, the provisions of the County Ordinance are not inconsistent and irreconcilable with either the local sales and use tax statutes or the statute imposing a statewide tax on accommodations. The ordinance does not attempt to change or circumvent any of the requirements of the State statutes, and nothing in the State statutes prohibits the County from imposing an additional and separate charge on accommodations rentals. *Cf. Arnold v. City of Spartanburg*, 201 S.C. 523, 23 S.E. (2d) 735 (1943) (additional regulation to that of State law does not constitute a conflict therewith).[9]

We also disagree with plaintiffs' argument that the County Ordinance is invalid because it conflicts with Article VIII, § 14, which prohibits local governments from "set[ting] aside . . . the structure and the administration of any governmental service or function, responsibility for which rests with the State government or which requires statewide uniformity."

Assuming the imposition of local sales and use taxes is a function, the responsibility for which rests with the State government or which requires statewide uniformity, the County Ordinance does not "set aside" the structure or administration of this function. As stated above, the ordinance does not conflict with any State tax statute, nor does the ordinance attempt to circumvent any of the requirements of these statutes. *Cf. Town of Hilton Head Island v. Coalition of Expressway Opponents*, 307 S.C. 449, 415 S.E. (2d) 801

---

[9] Plaintiffs also argue the General Assembly has preempted the entire field of local sales taxation. We disagree. In order to preempt an entire field, an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way. *Town of Hilton Head Island v. Fine Liquors, Ltd., supra.* Here, such legislative intent is absent.

(1992) (holding an initiated ordinance defective under Article VIII, § 14, because it attemped to limit the authority granted to the Department of Highways by State law).

Further, we disagree with plaintiffs' argument that the ■ County Ordinance violates equal protection because not all persons paying the 2% fee required by the ordinance are tourists. The fact that not all short-term renters are tourists, and that some tourists stay in private homes, does not render the ordinance's classification unconstitutional. *See Brown v. County of Horry*, 308 S.C. 180, 417 S.E. (2d) 565 (1992) (a legislatively created classification will not be set aside as violative of equal protection unless it is plainly arbitrary and there is no reasonable hypothesis to support the classification); *Foster v. South Carolina Dep't of Highways and Pub. Transp.*, 306 S.C. 519, 413 S.E. (2d) 31 (1991) (the classification does not need to completely accomplish the legislative purpose with delicate precision in order to survive a constitutional challenge).

### Town and City Ordinances

Plaintiffs argue the Town and City Ordinances, like the ■ County Ordinance, are invalid because they conflict with the local sales and use tax statutes. Plaintiffs also argue the Town Ordinance conflicts with the statute imposing a statewide tax on accommodations. We disagree. The ordinances do not attempt to change or circumvent any of the requirements of the State statutes, and nothing in these statutes prohibits the municipalities from imposing an additional and separate charge on accommodations rentals or food and beverage sales. *See City of North Charleston v. Harper, supra; Town of Hilton Head Island v. Fine Liquors, Ltd., supra; Arnold v. City of Spartanburg, supra.*

We also disagree with plaintiffs' argument that the ■ City Ordinance is preempted by or inconsistent with the State beer, wine, and alcohol tax statutes. These statutes essentially deal with taxes to be paid by wholesalers or importers of beer and wine, or license taxes to be paid for the privilege of selling alcoholic liquor in this State. *See* S.C. Code Ann. §§ 12-21-1010 to -1130 and §§ 12-33-10 to -630 (1976 and Supp. 1994). The statutes do not address taxes or fees on food or beverage sales in establishments holding an on-premises beer, wine, and/or liquor license.

Finally, we disagree with plaintiffs' argument that the Town and City Ordinances do not satisfy the constitutional requirements of equal protection. We find that the classification under each ordinance bears a reasonable relation to the legislative purpose to be effected. *See Brown v. County of Horry, supra; Robinson v. Richland County Council*, 293 S.C. 27, 358 S.E. (2d) 392 (1987).

## CONCLUSION

Because the defendants had the power to enact the ordinances at issue, and the ordinances are not inconsistent with the Constitution or general law of this State, we hold that the ordinances are valid.

As we have noted on several occasions, implicit in Article VIII is the realization that different local governments have different problems that require different solutions.[10] *See Robinson v. Richland County Council, supra* (cited with approval in *Brown v. County of Horry, supra*). By enacting statutes like § 4-9-25 and § 5-7-30, the General Assembly gave local governments the power to deal with these problems at the local level rather than at the State Capitol.[11]

Judgment for defendants.

WALLER, J., and COSTA M. PLEICONES, Acting Associate Justice, concur.

FINNEY and MOORE, JJ., dissent in separate opinions.

FINNEY, Justice:

I respectfully dissent. In my opinion, all three ordinances at

---

[10] Obviously, the local governments in this case face problems such as beach erosion and tourism costs that many inland governments do not face.

[11] As Justice Littlejohn stated in *Knight v. Salisbury*:

These changes were prompted by the feeling that Columbia should not be the seat of county government, and that the General Assembly should devote its full attention to problems at the state level. It was against this background that Article VIII was written. It is clearly intended that home rule be given to the counties and that county government should function in the county seats rather than at the State Capitol. If the counties are to remain units of government, the power to function must exist at the county level. Quite obviously, the framers of Article VIII had this in mind.

262 S.C. 565, 571, 206 S.E. (2d) 875, 877 (1974).

issue here are invalid because they are not authorized by statute.

These ordinances were enacted by the defendant local governments pursuant to their statutory authority to impose **uniform service charges** under S.C. Code Ann. § 4-9-30(5)(a) (county statute) and § 5-7-30 (municipal statute) (1986 and Supp. 1994), and the plaintiffs challenge the lawfulness of these **service charges.** The majority never addresses this issue, but instead decides this case on grounds never contemplated by the parties. In so doing, they reinterpret certain Home Rule statutes to effectuate a wholesale transfer of the taxing power from the General Assembly to local government. Under the majority's decision today, each political subdivision is free to impose virtually any tax which it wishes, from income tax to sales tax to excise tax. Not only is this *sua sponte* decision an unwarranted deviation from our usual procedural rules, more importantly, it represents an unprecedented rewriting of history and of the South Carolina Constitution.

This case requires that we revisit the issue of the power and authority of local governments to enact local laws. I agree with the majority that local governments may act only where a statute gives them the power to act. I disagree with their conclusions that broad language in statutes which endow these entities with their "police powers" somehow empower local governments to act as they wish, so long as their acts do not conflict with either the Constitution or the general law. There is no precedent for such a sweeping reading of these rather routine statutes, a reading which renders superfluous every other statute which contains a specific delegation of a governmental power.

The Home Rule Amendments mandate that the General Assembly provide by general law the powers of counties and municipalities. S.C. Const. art. VIII, § 7 (counties); the majority, these ordinances are invalid as they are inconsistent with the general law. Furthermore, although I strongly believe these ordinances levy what is in reality a tax, this determination is not necessary to the disposition of this case.

Section 4-9-25 provides that all counties "have authority to enact regulations, resolutions, and ordinances, *not inconsistent with the Constitution and general law of this State. . . .*" Similarly, § 5-7-30 provides each municipality "may enact reg-

ulations, resolutions, and ordinances, *not inconsistent with the Constitution and general laws of this State. . . ."* The ordinances in this case are inconsistent with the general law.

An ordinance is improper and void if it conflicts with the general law of the state on a matter of statewide concern or application. *Town of Hilton Head Island v. Coalition of Expressway Opponents,* 307 S.C. 449, 415 S.E. (2d) 801 (1992). A court is to examine the entire field on the subject as well as the ordinance itself to determine if it is inconsistent with state law. *See Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. 550, 397 S.E. (2d) 662 (1990); *McAbee v. Southern Rwy. Co.,* 166 S.C. 166, 164 S.E. 444 (1932). Furthermore, "each particular case must be determined as it arises." *McAbee,* 166 S.C. at 172, 164 S.E. 444. Here, these ordinances are in conflict with the Local Option Sales Tax[1] (LOST) and the State Accommodations Tax.[2]

All three ordinances conflict with the LOST. The LOST provides for a general statewide scheme through which counties can levy an additional sales and use tax of one percent. Like the LOST, the charges levied by these ordinances are due and payable at the time of the sale. The charge is calculated as a percentage of the retail sales price and collected by the seller.[3]

The General Assembly required among other things that a county hold a referendum before it can impose the LOST. The General Assembly limited the LOST to one percent and provided the manner in which the proceeds are to be handled. Further, the General Assembly limited the power to levy a LOST to only counties. The General Assembly also restricted the amount of proceeds which each county can receive and required the funds be used to roll back property taxes. A county would have no incentive to follow the more rigorous and limiting procedure set forth by the General Assembly if it could simply impose a service charge of a higher percentage upon a limited number of commodities raising greater proceeds to be used as it deems fit.

---

[1] S.C. Code Ann. § 4-10-10 et seq. (Supp. 1994).

[2] S.C. Code Ann. § 12-36-920 (Supp. 1994).

[3] In addition, these ordinances impose charges closely akin to the general statewide sales tax. S.C. Code Ann. § 12-36-5 et seq. (Supp. 1994). The only significant difference is the ordinances impose charges on only a limited number of commodities (hotel rooms, food, and beverages).

The City of Charleston has levied its service charge only upon food and beverages in those establishments with an on-premise beer and wine license. Simply by narrowing those commodities upon which the charge is levied, the City of Charleston should not be allowed to circumvent the General Assembly's mandate. To permit local governments to impose a charge upon a limited number of commonly used commodities rather than, or in addition to, the state-authorized LOST would defeat the taxing scheme established by the General Assembly and render these statutes meaningless. Further, the LOST legislation would be unnecessary, a result which could not have been intended by the Legislature. *See Graham v. State*, 109 S.C. 301, 96 S.E. 138 (1918) (it is presumed the legislature will not do a futile thing).

Further, the charges imposed by the Charleston County and the Town of Hilton Head ordinances are inconsistent with the State Accommodations Tax. These ordinances closely track the State Accommodations Tax in form and substance. For example, the Charleston County ordinance defines "accommodations" in substantially the same language as in S.C. Code Ann. § 12-36-920 (Supp. 1994).

These local governments can not circumvent the statutory limitations placed upon delegation of the State's ad valorem property tax power, must relate to the ownership of real or personal property.[4] Since neither the Town's service charge on rentals nor the City's charge on restaurant bills is a charge related to the ownership of real or personal property, I find them invalid.

The relevant statute delegating the General Assembly's property taxing power to the County pursuant to art. X, § 6 is § 4-9-30(5)(a), which gives county governments the power:

> *to assess property and levy ad valorem property taxes and uniform service charges, including the power to tax different areas at different rates related to the nature and level of governmental services provided* and make appropriations for functions and operations of the county, including, but not limited to, appropriations for general public works, including roads, drainage, street lighting,

---

[4] I would overrule *Williams v. Town of Hilton Head*, 311 S.C. 417, 429 S.E. (2d) 802 (1993) to the extent it conflicts with this holding.

and other public works; water treatment and distribution; sewage collection and treatment; courts and criminal justice administration; correctional institutions; public health; social services; transportation; planning; economic development; recreation; public safety, including police and fire protection, disaster preparedness, regulatory code enforcement; hospital and medical care; sanitation, including solid waste collection and disposal; elections; libraries; and to provide for the regulation and enforcement of the above. . . . (Emphasis added.)

This subsection of § 4-9-30, like § 5-7-30, gives counties three powers with regard to property: (1) the authority to make assessments; (2) to levy ad valorem taxes; and (3) to impose uniform service charges. The funds generated under this statute must be used for the functions and operations of the county. That "uniform service charges" must relate to the ownership of real or personal property is apparent from the language of § 4-9-30(5)(a) itself and from art. X, § 6. *See also Ex parte Yeargin, supra.* While the language of § 4-9-30(5)(a) is not as explicit as that of § 5-7-30, the purposes of the § 4-9-30 and § 5-7-30 are identical, that is, to delineate the specific powers given to local governments. In both statutes the term "uniform service charges" is used only in conjunction with the power of local government to impose property-related charges, a power derived from art. X, § 6. It is unreasonable to believe the legislature intended the term "uniform service charge" to have one meaning under § 5-7-30 and a different meaning under § 4-9-30(5)(a). Uniform service charges must be based upon the ownership of real or personal property, and are not an independent source of revenue raising. *See also Brown v. Horry County, supra* (approving uniform service charge on personal property in the county).

The Charleston County ordinance imposing a 2% fee on bills for short-term rentals is not a uniform service charge based upon the ownership of real or personal property, and is therefore invalid because it is not authorized by § 4-9-30(5)(a).

As presently written, §§ 4-9-30 and 5-7-30 allow local governments to impose uniform service charges only when those charges are based upon the ownership of real or personal property. I do not suggest that the General Assembly could not give local governments the power to impose other types of

taxes, for example on sales,[5] or to authorize charges based not on property but on individuals[6] or transactions such as those at issue here, but rather would hold it has not done so in § 4-9-30(5)(a) or § 5-7-30. Accordingly, I would hold the ordinances at issue here invalid.

MOORE, Justice:

I respectfully dissent. Even if S.C. Code Ann. §§ 4-9-25 and 5-7-30 (Supp. 1994) give the counties and municipalities, respectively, a broad grant of authority as contended by counties and municipalities for levying and collecting the LOST and the State Accommodations Tax by imposing almost identical charges upon a narrow category of commodities. Accordingly, I would hold these ordinances are invalid as inconsistent with the general law.

---

[5] *See, e.g.,* S.C. Code Ann. §§ 4-10-10 through -100 (Supp. 1994) (Local Sales and Use Tax Act).

[6] *See, e.g.,* S.C. Code Ann. § 4-21-10 (1986) (counties may impose special tax, fee or service charge on property *or occupants thereof* to pay for fire protection services, ambulance services, and/or medical clinic facilities). Note that § 4-9-30(5)(a) authorizes a property-related tax or uniform service charge for the same purposes.