795 S.E.2d 163

**Todd OLDS, Appellant,**

v.

**CITY OF GOOSE CREEK, Respondent.**

Appellate Case No. 2014-002393
Opinion No. 5454
Court of Appeals of South Carolina.
Heard June 6, 2016
Filed November 16, 2016
Rehearing Denied January 20, 2017

<hr>

Thomas R. Goldstein, of Belk Cobb Infinger & Goldstein, PA, of Charleston, for Appellant.

Timothy Alan Domin, of Clawson & Staubes, LLC, of Charleston, for Respondent.

SHORT, J.:

Todd Olds appeals the circuit court's order affirming a decision of the Goose Creek City Council regarding the computation of gross income under the business license tax ordinance of the City of Goose Creek (the City). On appeal, Olds argues the circuit court erred in finding the City (1) was not exceeding its authority under the state constitution by imposing a business license tax on the sale price of real property and (2) was properly applying its business license tax ordinance. Olds also appeals the circuit court's grant of summary judgment as to his claim against the City for a violation of procedural due process, arguing the circuit court erred in finding the City's appeal procedure was unfair but not granting Olds a remedy. Finally, Olds appeals the circuit court's grant of summary judgment as to various claims he alleged against the City, arguing evidence demonstrated City employees violated his constitutional rights and singled him out for disparate and arbitrary treatment. We affirm the circuit court on all issues.

**FACTS/PROCEDURAL HISTORY**

The City collects a business license tax on persons doing business within the City limits. The tax is computed according to the business's gross income from the preceding year. This case arises out of Olds's dispute with the City as to the meaning of gross income under its business license tax ordinance.

Olds is engaged in the business of buying and selling real property. In January 2011, Olds filed an application to renew his City business license and reported actual gross receipts for 2010 of $58,432.46.[1] Based on this information, Olds calculated his 2011 business license tax to be $460.40, and he paid this amount to the City. In May 2011, City Business License Inspector Jennifer Althoff sent Olds a notice, informing him of

---

1. The City's business license renewal form uses the term "actual gross receipts," rather than "gross income." However, the form also includes a section where the applicant certifies he or she has accurately reported the business's "gross income."

a deficiency in his business license payment. Althoff claimed Olds failed to report "revenue" from the sale of real property located at 123 Evergreen Magnolia Avenue in Goose Creek. Althoff explained Olds should have included the sale price of the property as revenue on his 2011 business license renewal application. Accordingly, Althoff claimed Olds underpaid his business license tax by $468. Olds appealed this decision to City Finance Director Ron Faretra, then to City Administrator Dennis Harmon, and eventually to the City Council.

In anticipation of the City Council hearing his appeal, Olds submitted a memorandum of law in support of his appeal. Prior to reviewing Olds's appeal, the City informed Olds that pursuant to the relevant ordinance, the appeal would be reviewed without further oral argument or presentation of evidence. During the appellate hearing, City officials presented a brief summary of the issue to the City Council and answered questions from council members. Olds attended the hearing; however, neither he nor his attorney was allowed to actively participate. The City Council affirmed the City Administrator's decision.

On October 12, 2011, Olds filed a complaint against the City in the Berkeley County Court of Common Pleas. Olds later amended his complaint, adding Althoff, Faretra, and the City Department of Public Works as defendants. In his amended complaint, Olds listed his first cause of action as "Appeal from City Council—substantive/procedural due process." Olds asserted additional claims against the City for (1) violation of equal protection; (2) violation of procedural due process; (3) abuse of process; (4) violations of 42 U.S.C. § 1983 and Article I § 22 of the South Carolina Constitution; and (5) violation of the South Carolina Freedom of Information Act. Olds also included a civil conspiracy claim against Faretra and Althoff and a breach of contract claim against the City's Department of Public Works.

On August 31, 2012, while the case was pending in circuit court, Olds moved for an injunction, requesting the circuit court order the City to turn on water service at a home he owned, located at 834 North Aylesbury Road. Olds alleged the City was withholding water service in an attempt to force him to capitulate to the City's position in the 2011 business license

dispute. In support of his motion, Olds submitted an affidavit from himself, explaining the City initially refused to supply water to the property until he paid his 2012 business license tax based on gross sales from 2011. Olds further explained that after he paid this tax under protest, the City still refused to supply water service based on an alleged underpayment of his 2011 business license tax. Olds also submitted an affidavit from Robert Eckhardt, who claimed that while picking up trash at the home one day, he was "detained" by Faretra and Althoff and questioned about how much Olds was paying him and whether he had a business license. The circuit court denied the motion.

On January 16, 2013, Olds moved for summary judgment on the issue of liability on the grounds that (1) the City had denied him due process by not allowing him to appear and be heard in the appeal to the City Council and (2) the City was improperly attempting to levy a business license tax upon his gross receipts, rather than his gross income. In support of his motion, Olds submitted a supplemental affidavit describing his disagreement with the City. In the affidavit, Olds explained that in 2010 he had a dispute with the City regarding repairs he was making to a home he owned. Olds stated that shortly after resolving the repair dispute, he received the City's notice alleging he had incorrectly reported his gross income on his business license renewal application. Olds claimed the City had denied him water service and Faretra and Althoff threatened to "shut off water to all properties" if he did not capitulate to the City's position in the business license dispute. Olds also submitted an affidavit of Kristin Balding Gutting, a professor of tax law at the Charleston School of Law. In her affidavit, Professor Gutting opined the City was incorrectly applying its business license tax ordinance by levying the tax on the sale price of the homes sold by Olds, rather than his gain.

Subsequently, the City moved the circuit court to hear Olds's appeal from the City Council and for summary judgment as to Olds's other claims. In support of its motion, the City submitted affidavits from Harmon and Faretra. Both Harmon and Faretra explained it is the City's policy to not initiate water service if a business does not have a business license or has failed to pay its business license tax. However,

they explained the City will not shut off existing water service in these instances. Faretra also claimed the City had discovered Olds did not report any income from the 2010 sale of a home located at 100 Spalding Drive and stated the City will not provide Olds with new water service until his past due business license taxes are paid in full.

The circuit court affirmed the City Council's decision regarding the meaning of gross income under the ordinance and granted the City summary judgment on Olds's other claims. As to Olds's procedural due process claim, the circuit court found it was unfair for the City to allow its employees to participate in the appellate hearing but not allow Olds to participate. However, the circuit court found Olds was not prejudiced by this process because the issue was one of statutory construction and the issue was preserved for appeal. The circuit court suggested that in the future, the City Council allow persons appealing the City Administrator's decisions to participate in the appellate hearing or review the decision without hearing from either side.

The circuit court also granted summary judgment to the City on Olds's other claims. The circuit court found evidence showed the City was applying the business license ordinance uniformly and not taxing Olds differently from any other business. Additionally, the circuit court found that under the Tort Claims Act, Olds was barred from asserting any tort claim based on the City's assessment of the business license tax. Olds filed a motion for reconsideration, which the circuit court denied. This appeal followed.

## STANDARD OF REVIEW

This appeal consists of a review of the circuit court's decision affirming the decision of the City Council and the circuit court's order granting the City summary judgment as to Olds's other claims. As to the circuit court's decision affirming the City Council, the issue on appeal concerns the construction of a state statute and a city ordinance. Accordingly, this court is free to decide this issue without any deference to the circuit court. *See Sloan v. Greenville Cty.*, 380 S.C. 528, 534, 670 S.E.2d 663, 667 (Ct. App. 2009) ("The issue of statutory interpretation is a question of law for the court."); *id.* ("We are

free to decide questions of law with no deference to the trial court.").

We review Olds's other issues under the standard of review applicable to appeals from a grant of summary judgment. "When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Fleming*, 350 S.C. at 493–94, 567 S.E.2d at 860.

## I. GROSS INCOME AND THE BUSINESS LICENSE TAX

Olds argues the circuit court erred in affirming the City Council's decision concerning the meaning of gross income under the City's business license ordinance because (1) the City exceeded its authority under the South Carolina Constitution by levying its business license tax on Olds's gross receipts and (2) the plain language of the ordinance imposes a tax on gross income, not gross receipts. We disagree.

"The cardinal rule of statutory construction is that courts will ascertain and effectuate the intent of the lawmaking body." *Historic Charleston Found. v. Krawcheck*, 313 S.C. 500, 504, 443 S.E.2d 401, 404 (Ct. App. 1994). "A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 412, 526 S.E.2d 716, 719 (2000).

Section 5-7-30 of the South Carolina Code (Supp. 2015) grants municipalities the power to "enact regulations, resolutions, and ordinances, not inconsistent with the [c]onstitution and general law of this [s]tate." This statute describes various powers possessed by municipalities, including the power to

"levy a business license tax on gross income." *Id.* The statute does not define gross income. Furthermore, gross income is not defined anywhere within Title 5 of the South Carolina Code, which provides the laws governing municipal corporations.

■ Olds first argues the City has exceeded its authority under our state constitution by levying a business license tax on the sale price of real property. Olds contends the City's authority to levy a business license tax is limited by the meaning of "gross income," as that term is used in section 5-7-30. Olds further asserts gross income under section 5-7-30 carries the same meaning as gross income under the South Carolina Income Tax Act, which provides that South Carolina gross income is computed by making certain modifications to gross income computed under the Internal Revenue Code (IRC). S.C. Code Ann. § 12-6-1120 (2014). None of the modifications required to compute South Carolina gross income are relevant in Olds's case, and both parties agree that under the IRC, gross income on the sale of real property is equal to the seller's gain. *See id.*; I.R.C. § 61(a)(3) (2012) (explaining gross income includes "[g]ains derived from dealings in property"); Treas. Reg. § 1.61-6(a) (2015) ("Generally, the gain is the excess of the amount realized over the unrecovered cost or other basis for the property sold or exchanged.").

We find the City's power to levy a business license tax is not limited by section 5-7-30. As our supreme court has explained, "the broad grant of power stated at the beginning of [section 5-7-30] is not limited by the specifics mentioned in the remainder of the statute." *Hosp. Ass'n of S.C., Inc. v. Cty. of Charleston*, 320 S.C. 219, 227, 464 S.E.2d 113, 118 (1995). "The only limitation on the broad grant of power to municipalities in [section] 5-7-30 is that the regulation, resolution, or ordinance may not be inconsistent with the [c]onstitution and general law of this [s]tate." *Id.* Olds has not set forth an argument explaining how the ordinance is inconsistent with our state constitution or other state law. Accordingly, our inquiry must focus on whether the City is properly applying its own ordinance.

For the purpose of calculating the applicable business license tax, the City defines gross income as follows:

*GROSS INCOME.* The total revenue of a business, received or accrued, for one calendar year, collected or to be collected by a business within the city, excepting, therefrom, business done wholly outside of the city on which a license tax is paid to some other municipality or county and fully reported to the city or county. The term *GROSS RE-CEIPTS* means the value proceeding or accruing from the sale of tangible personal property, including merchandise and commodities of any kind and character and all receipts, by the reason of any business engaged in, including interest, dividends, discounts, rentals of real estate or royalties, without any deduction on account for the cost of the property sold, the cost of the materials used, labor or service cost, interest paid or any other expenses whatsoever and without any deductions on account of losses. The *GROSS INCOME* for business license purposes shall conform to the gross income reported to the State Tax Commission or the State Insurance Commission. In the case of brokers or agents, *GROSS INCOME* shall mean gross commissions received or retained, unless otherwise specified. *GROSS INCOME* for insurance companies means gross premiums collected. *GROSS INCOME* for business license tax purposes shall not include taxes collected for a governmental entity, escrow funds or funds, which are the property of a third party. The value of bartered goods or trade-in merchandise shall be included in *GROSS INCOME*. The *GROSS INCOME* for business license purposes may be verified by inspection of returns and reports filed with the Internal Revenue Service, the South Carolina Department of Revenue, the South Carolina Insurance Commission or other government agency.

Goose Creek City Code § 110.001.

■ Similar to his argument regarding section 5-7-30, Olds contends gross income under the ordinance is the same as gross income under the IRC. Olds asserts the City is misapplying its ordinance by levying its business license tax on the sale price of real property rather than the gain. We disagree.

"The term 'gross income' does not carry the same definite and inflexible meaning under all circumstances and wherever used. Its meaning depends upon the subject under consideration, the connection in which it was used, and the results intended to be accomplished." *Bogan v. Bogan*, 298 S.C. 139,

142–43, 378 S.E.2d 606, 608 (Ct. App. 1989) (quoting *Alexander v. Alexander*, 158 F.2d 429, 430 (10th Cir. 1946)). The ordinance in this case defines gross income as "[t]he total revenue of a business, received or accrued, for one calendar year...." Black's Law Dictionary defines "revenue" as "[i]ncome from any and all sources; gross income or gross receipts." *Revenue, Black's Law Dictionary* (10th ed. 2014).

 Notwithstanding the ordinance's later explanation that gross income for business license purposes shall conform to the gross income reported to the State Tax Commission[2] and that gross income may be verified by the inspection of state and federal tax returns, we find the City intended to define gross income for business license tax purposes as the total revenue of the business. This is consistent with how our supreme court has historically defined gross income in the context of business license taxes. *See Columbia Ry., Gas & Elec. Co. v. Jones*, 119 S.C. 480, 494, 112 S.E. 267, 272 (1922) ("Gross income means the total receipts from a business before deducting expenditures for any purpose."). Applying the ordinance to the facts of the instant case, we find the City intended the business license tax to apply to the total sale price of real property rather than merely the business's gain. Accordingly, we affirm the circuit court on this issue.[3]

## II. PROCEDURAL DUE PROCESS

 Olds also appeals the circuit court's grant of summary judgment as to his procedural due process claim, arguing the

2. The State Tax Commission is now known as the South Carolina Department of Revenue. We note the standard income tax forms from the South Carolina Department of Revenue do not include a space for gross income to be reported.

3. Olds also contends the circuit court erred in deciding this issue by ignoring (1) evidence of animus that exists between Olds and City employees and (2) Professor Gutting's affidavit. We find any animus that may exist between Olds and City employees is irrelevant in determining the meaning of gross income under the ordinance. As to Professor Gutting's affidavit, the circuit court properly disregarded the affidavit because it was nothing more than a legal argument. *See Dawkins v. Fields*, 354 S.C. 58, 66, 580 S.E.2d 433, 437 (2003) ("In general, expert testimony on issues of law is inadmissible."); *id.* at 66–67, 580 S.E.2d at 437 (finding the trial court properly refused to consider an affidavit that was a legal argument as to why summary judgment should be denied).

circuit court erred in finding Olds was not entitled to a remedy for a violation of due process after declaring the City's administrative appeal procedure flawed and recommending the City amend its procedure. Olds contends he was prejudiced by the City Council allowing City employees to present the City's position in the appellate hearing but not allowing him to present his case. We disagree.

 "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution." *Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008). "The fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." *Id.* "Due process does not require a trial-type hearing in every conceivable case of government impairment of a private interest." *Id.* "Rather, due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 172, 656 S.E.2d at 350. "To prevail on a claim of denial of due process, there must be a showing of substantial prejudice." *Olson v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 57, 69, 663 S.E.2d 497, 504 (Ct. App. 2008).

The circuit court found the City Council's appellate procedure unfair; however, it found Olds was not prejudiced because the issue was one of statutory construction and Olds's position was fully preserved by the filing of his brief. We agree with the circuit court. The central issue of Olds's appeal to the City Council was the meaning of "gross income" as that term is used in computing Olds's business license tax under the applicable city ordinance. This is a question of law, which the circuit court reviewed without any deference to the City Council's decision. *See Sloan*, 380 S.C. at 534, 670 S.E.2d at 667 ("The issue of statutory interpretation is a question of law for the court."); *id.* ("We are free to decide questions of law with no deference to the trial court."). Because the circuit court was able to review this issue without any deference to the City Council's decision, Olds suffered no prejudice from the procedure used by the City Council in reviewing Olds's appeal. Furthermore, as noted by the circuit court, Olds was able to submit a written memorandum to the City Council.

Olds also raised an issue to the City Council regarding the City's decision to withhold water service. Olds was able to raise this issue again in circuit court through various claims; therefore, the City Council's procedure did not prejudice Olds as to this issue. Accordingly, the circuit court properly granted summary judgment. *See Olson,* 379 S.C. at 69, 663 S.E.2d at 504 ("To prevail on a claim of denial of due process, there must be a showing of substantial prejudice.").

## III. DISPARATE AND ARBITRARY TREATMENT

 Olds further argues the circuit court erred in granting summary judgment because evidence showed the City singled him out for disparate and arbitrary tax treatment and shut off the water supply to his properties in an attempt to force him to capitulate to the City's position in the business license tax dispute. We disagree.

First, we note Olds does not clearly identify the causes of action to which this issue applies. His stated issue on appeal refers to his constitutional rights; however, in his argument, Olds also discusses some of his other claims that are not based on a violation of any constitutional right. In his brief, Olds writes:

Whether the Court evaluates [the acts of Faretra and Althoff] as violations to the appellant[']s right to substantive due process, or equal protection or as acts of a civil conspiracy or abuse of process, the classification of [the] violation is not important at the summary judgment stage when all the plaintiff has to demonstrate is the existence of genuine issues of material fact as to whether the [City] did or did not single him out for particular action.

In his reply brief, Olds even suggests he intended this issue to relate to causes of action not mentioned in his argument under this issue in his appellant's brief.[4] Regardless of Olds's failure to clearly identify the causes of action to which this issue relates, we find there was no genuine issue of material

---

4. For example, in Olds's reply brief, he contends it was unnecessary for him to set forth an argument regarding the circuit court's grant of summary judgment as to his breach of contract action because "[i]t is not a separate claim, but rather part of the same transaction that forms the plaintiff's claim for abuse of process [and] civil conspiracy."

fact regarding Olds's allegation that the City treated him differently from other similar businesses. Olds did not present any evidence to the circuit court to support this allegation. Accordingly, we affirm the circuit court's grant of summary judgment.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.